AU PHARMACEUTICAL,
INC., Appellant,

v.

Betty BOSTON, et al., Appellees.

No. 06–98–00032–CV.

Court of Appeals of Texas,
Texarkana.

Argued Dec. 8, 1998.

Decided Jan. 29, 1999.

Ronald D. Gray, Geary Porter & Donovan PC, Addison, for appellant.

Russell Clay Brown, Wellborn, Houston, Adkison, Mann, Henderson, Ray L. Cox, Houston, for appellees.

Before CORNELIUS, C.J., GRANT and ROSS, JJ.

## O P I N I O N

Opinion by Justice ROSS.

AU Pharmaceutical, Inc. (AU) appeals from the granting of summary judgment in favor of Betty Boston, Floyd Boston, Helen Fowler, L.E. Fowler, Gary Hawley, Barbara Jones, Wayland Jones "as representative of the Estate of H. Weimar Jones," Edith Keller, Helen McGehee, Slayton McGehee, Amelie Moffett, Milam Roberts, and Doris Snow (collectively referred to herein as Boston) for breach of a written settlement agreement between the parties. The trial court ultimately awarded damages of $140,000.00, pre-judgment interest of $5,615.34 (at a rate of six percent), postjudgment interest at a rate of ten percent per annum until paid, and attorneys' fees of $14,000.00. In five points of error, AU contends that the trial court erred in awarding prejudgment and post-judgment interest, in awarding attorneys' fees, and in awarding judgment in favor of the estate of H. Weimar Jones, appearing through its purported representative Wayland Jones.

## BACKGROUND

On March 4, 1996, Boston entered into a comprehensive settlement agreement and release of claims (contract) with AU. The contract provided that AU would pay Boston $140,000.00 on or before February 25, 1997, and stated:

> Plaintiffs [Boston] agree and understand that the Settlement Proceeds shall not appreciate with interest or by any other means, the parties specifically agreeing that any interest to be charged on the Settlement Proceeds to equal zero (0) percent.

On March 12, 1997, Boston sued AU and, individually, Jeffery Ivy, the president of AU, on a sworn account and for breach of contract, negligence, gross negligence, misrepresentation and fraud, alleging that the defendants breached the contract of March 4, 1996. On September 22, 1997, Boston filed a motion for summary judgment based solely on the contract claims, and the trial court rendered summary judgment against AU on October 27, 1997. It awarded actual damages of $140,000.00, prejudgment interest of $8,553.42 (at a rate of ten percent), postjudgment interest at a rate of ten percent per annum until paid, and attorneys' fees of $14,000.00. Also on October 27, the court granted Boston's motion to nonsuit all claims against AU, except for the breach of contract claim, and all claims against Ivy. AU later filed a motion for new trial which was overruled by operation of law. On January 23, 1998, the trial court entered a *nunc pro tunc* order, changing its award of prejudgment interest to $5,615.34 (a rate of six percent).

*PREJUDGMENT INTEREST*

■ AU contends that the trial court erred in awarding six percent prejudgment interest pursuant to Tex. Fin.Code Ann. § 302.002 (Vernon 1998),[1] effective September 1, 1997, which reads as follows:

> When no specified rate of interest is agreed on by the parties, interest at the rate of six percent per year is allowed on all accounts and contracts ascertaining the amount payable, beginning on the 30th day after the date on which the amount is due and payable.

AU argues that the parties agreed in the contract upon a rate of zero percent interest in the contract and that when a contract provides for a specific rate of interest, that is the only rate that may be awarded as prejudgment interest.

Boston contends that the parties' agreement on zero percent interest applies only during the stated time for performance of the contract and that they had no agreement as to prejudgment interest, i.e., compensation for the use, forbearance, or detention of money from the date of breach of the contract (maturity date) until the date of judgment. They argue that the terms of the agreement must be read as a whole and that, reading them as a whole, it is obvious the parties made no agreement as to interest after the maturity date.

Our first task is to determine if Section 302.002 applies in a case, as here, where the parties have agreed to an interest rate of zero percent. The critical language in the statute is, "When no specified rate of interest is agreed on by the parties...." Does this language refer to the lack of an agreement as to interest, or does it refer to an agreement to pay no interest?

We have found no Texas cases applying this statute to a contract where the parties agreed upon an interest rate of zero percent. However, a Missouri court of appeals has recently considered a claim that the trial court erred in awarding statutory prejudgment interest on defaulted promissory notes where the parties had agreed to the payment of zero interest. The Missouri statute authorizing prejudgment interest "when no rate of interest is agreed upon" is similar to Section 302.002. In sustaining this claim, we find the reasoning of the Missouri court to be persuasive:

> Here, there is no dispute that the parties agreed to interest on the notes at the rate of zero percent.... The fact that the rate agreed upon was zero percent does not change the fact that there was an agreement between them as to what interest rate would be paid. This is not a case where an interest rate was never discussed and decided upon. The "no" found in the phrase in the statute, "when no other rate is agreed upon," obviously refers to the lack of an agreement as to interest, not to an agreement to pay no or zero interest. Giving the phrase, "when no other rate is agreed upon," in [the statute] its plain and ordinary meaning, we interpret it to mean that where the parties to a note have agreed upon interest at any rate, including a rate of zero, they are bound by their agreement and an award of interest at the statutory rate is not implicated.

*Manfield v. Auditorium Bar & Grill, Inc.,* 965 S.W.2d 262, 269–70 (Mo.Ct.App.1998) (citations omitted).

■ In interpreting a statute, Texas courts are also required to give words their ordinary and plain meaning. *Geters v. Eagle Ins. Co.,* 834 S.W.2d 49, 50 (Tex.1992). Applying this rule of construction to Section 302.002, we interpret the phrase, "When no specified rate of interest is agreed on by the parties ...." to refer to the lack of an agreement as to interest, and not to an agreement to pay no interest. AU and Boston had an agreement as to interest, and that agreement was, "that any interest to be charged on the

---

1. Some cases cited in this opinion refer to Tex. Rev.Civ. Stat. Ann. art. 5069–1.03. This statute was repealed in 1997 and recodified at Tex. Fin.Code Ann. § 302.002 (Vernon 1998). Article 5069–1.03 read: "When no specified rate of interest is agreed upon by the parties, interest at the rate of six percent per annum shall be allowed on all written contracts ascertaining the sum payable, from and after the time when the sum is due and payable; and on all open accounts, from the first day of January after the same are made." *See Phillips Petroleum Co. v. Stahl Petroleum Co.,* 569 S.W.2d 480, 483 (Tex.1978).

Settlement Proceeds to equal zero (0) percent." That agreement took the matter out of Section 302.002, and it was error for the trial court to award Boston the statutory six percent prejudgment interest.

■ Turning our attention to Boston's argument that the agreement on zero percent interest applied only during the stated time for performance of the contract and that the parties made no agreement as to interest after the maturity date, we first note that the Texas Supreme Court has held that when a note specifies a rate of interest before maturity, but is silent about any rate after maturity, TEX.REV.CIV. STAT. ANN. art. 5069–1.03 [2] does not apply and the prematurity rate is implied as the postmaturity rate. *Petroscience Corp. v. Diamond Geophysical, Inc.*, 684 S.W.2d 668, 668–69 (Tex.1984); *see also Bailey, Vaught, Robertson and Co. v. Remington Invs., Inc.*, 888 S.W.2d 860, 866 (Tex. App.-Dallas 1994, no writ). The promise to pay a note is a contract no different from the promise to pay the settlement proceeds here. Since AU and Boston specified a rate of interest of zero percent in their contract, that same rate of interest is implied as the postmaturity rate.

This same issue was also addressed in the *Manfield* case. On the question of whether the statutory rate, or the zero rate provided for in the notes, applied after maturity, the Missouri court wrote:

There is nothing in this language [of the statute] to suggest that [it] is to apply where parties agree in a note to an interest rate to be paid, but do not specify whether it is to apply before and/or after its maturity or default. If the legislature had intended for the statutory interest rate to apply where, as here, there is an agreement as to the rate of interest to be charged, but no separate and specific agreement as to whether the same rate is to be charged after maturity or default, it could have simply said so. It did not. The clear implication of the statutory language used is that if the parties to a note have agreed upon an interest rate without specifying whether it is to apply before and/or after maturity, the statutory interest rate of [the statute] cannot be charged.

*Manfield*, 965 S.W.2d at 270.

That court further pointed out that the statute under consideration clearly authorizes the parties to a note to contract on different rates of interest to be charged before and after maturity. The same is true of Section 302.002. However, there is nothing in the contract between AU and Boston-as there was nothing in the notes in issue in *Manfield*-to indicate that the parties intended that the zero percent interest rate agreed upon was to apply only prior to maturity. These parties made other agreements which anticipated breach of their contract, as evidenced by the following language:

Should it become necessary to enforce this Agreement, or any portion of it, or to declare the effect of any provision of this Agreement, the Party prevailing in a judgment concerning such enforcement or declaration shall be entitled to recover costs, including reasonable attorneys' fees, incurred in obtaining or defending against such judgment.

We find it significant that the recovery of interest was not included in this provision. If the parties had intended for their specified rate of zero percent interest not to apply "[s]hould it become necessary to enforce this Agreement," it is reasonable to assume they would have expressed it in this provision. They did not, and we cannot consider Boston's interpretation that zero percent applied only until maturity.

■ In construing contracts, the primary concern of courts is to ascertain and to give effect to the intentions of the parties as expressed in the instrument. *Ideal Lease Serv., Inc. v. Amoco Prod. Co.*, 662 S.W.2d 951, 953 (Tex.1983). If the provision in question is unambiguous, courts must determine the rights and liabilities of the parties by giving legal effect to the contract as written. *Id.* The intent of AU and Boston that "the Settlement Proceeds shall not appreciate with interest or by any other means" is unambiguous, and they did not condition or

---

**2.** Predecessor statute to TEX FIN.CODE ANN. § 302.002.

restrict that agreement to apply only until maturity.

■ Boston argues that their recovery of prejudgment interest at the statutory rate is also justified on equitable grounds, citing *Phillips Petroleum Co. v. Stahl Petroleum Co.*, 569 S.W.2d 480 (Tex.1978). However, it is clear from *Phillips* that equitable interest applies when no specified interest is agreed upon by the parties. Other cases hold that interest in equity may be appropriate if the sum payable is not ascertainable from the contract. *Wheat v. American Title Ins. Co.*, 751 S.W.2d 943, 945 (Tex.App.-Houston [1st Dist.] 1988, no writ); *Acco Constructors, Inc. v. National Steel Prods. Co.*, 733 S.W.2d 368, 370 (Tex.App.-Houston [14th Dist.] 1987, no writ). Here, AU and Boston agreed on the specified interest of zero percent, and the settlement proceeds were clearly ascertainable from the contract. We find that the equitable interest doctrine does not apply in this case. AU's first point of error is sustained.

### POSTJUDGMENT INTEREST

■ Tex. Fin.Code Ann. § 304.002 (Vernon 1998),[3] effective September 1, 1997, reads:

A judgment of a court of this state on a contract that provides for a specific interest rate earns interest at a rate equal to the lesser of:

(1) the rate specified in the contract; or

(2) 18 percent a year. .

Because the contract provides for a specific interest rate of zero percent, Section 304.002 applies to provide a postjudgment interest rate of zero percent. In awarding postjudgment interest at the rate of ten percent, the trial court apparently applied Tex. Fin. Code Ann. § 304.003 (Vernon 1998). However, that statute provides that the rate of interest to be determined under Section 304.003 applies to a judgment to which Section 304.002 does not apply. We hold that the trial court erred in awarding post-

judgment interest, and AU's second point of error is sustained.

### SEGREGATION OF FEES

AU contends that the trial court improperly awarded attorneys' fees because Boston did not produce evidence that they segregated the work done pursuing the nonsuited claims against AU (sworn account, negligence, gross negligence, misrepresentation, and fraud) and against Ivy. AU argues that Boston's only summary judgment evidence as to attorneys' fees was the affidavit of their attorney, Ray Cox, who merely stated that he had been retained by Boston on a ten percent contingency basis to pursue claims on a sworn account and for breach of contract, negligence, gross negligence, misrepresentation, and fraud.

■ Attorney's fees must be authorized by statute or contract; the common law does not provide a right to attorney's fees. *Hill v. Heritage Resources, Inc.*, 964 S.W.2d 89, 143 (Tex.App.-El Paso 1997, pet. denied). If a case involves more than one claim, fees may be recovered only for those claims falling within the statute or contract. *Id.* Further, the party seeking recovery of attorney's fees always has the burden of proof to show that the fees were incurred against the particular defendant sought to be charged. *Koch Oil Co. v. Wilber*, 895 S.W.2d 854, 867 (Tex.App.-Beaumont 1995, writ denied). Where a plaintiff seeks to charge multiple defendants and one or more of those defendants have settled, the plaintiff must segregate the fees so that the remaining defendants are not charged fees for which they are not responsible. *Stewart Title Guaranty Co. v. Sterling*, 822 S.W.2d 1, 10–11 (Tex.1991); *Koch,* 895 S.W.2d at 867.

■ Courts recognize an exception to this general duty to segregate fees in cases in which "the attorney's fees rendered are in connection with claims arising out of the same transaction and are so interrelated that their 'prosecution or defense entails proof or denial of essentially the same facts.'" *Stewart,* 822 S.W.2d at 11; *see Koch,* 895 S.W.2d

---

**3.** Tex. Fin.Code Ann. § 304.002 (Vernon 1998) was preceded by Tex.Rev.Civ. Stat. Ann. art. 5069–1.05, § 1.

at 867. "[W]hen the causes of action involved in the suit are dependent upon the same set of facts or circumstances and thus are 'interwined [sic] to the point of being inseparable,' the party suing for attorney's fees may recover the entire amount covering all claims." *Stewart*, 822 S.W.2d at 11.

 The standard of review for an award of attorney's fees on the basis of breach of contract is abuse of discretion. *Pyles v. United Servs. Auto. Ass'n*, 804 S.W.2d 163, 164 (Tex.App.-Houston [14th Dist.] 1991, writ denied); *cf. City of Austin v. Janowski*, 825 S.W.2d 786, 788 (Tex.App.-Austin 1992, no writ). The test for abuse of discretion is whether the trial court's decision was arbitrary or unreasonable. *Pyles*, 804 S.W.2d at 164. A trial court's actions are unreasonable only if the court acted without reference to any guiding rules and principles. *Janowski*, 825 S.W.2d at 788. If an award of attorney's fees is erroneously based upon evidence of unsegregated fees, the case must be remanded for more evidence on the issue. *Aetna Cas. and Surety v. Wild*, 944 S.W.2d 37, 41 (Tex.App.-Amarillo 1997, writ denied).

Boston contends that they did not have to segregate attorneys' fees because they fall within the exception to the general duty to segregate. They argue that their use of multiple causes of action and parties was for the sole purpose of collecting the total amount of the settlement proceeds, $140,-000.00, and that because their claims arose out of the same facts and the prosecution entailed proof of the same facts, segregation was impossible.

AU argues that Boston produced no evidence at the summary judgment hearing to show that the claims are not severable or that the claims are so intertwined as to render segregation impossible. Further, it argues that the proof required to prove the tort claims is distinctly different from that required to prove the contract claims, requiring separate discovery and trial strategies, and the fees are thus subject to segregation.

We agree that Boston did not produce evidence that the various legal claims they asserted were so intertwined that they were inseparable. The extent of Boston's proof of attorneys' fees was the affidavit of Cox, which did not purport to segregate fees by claim or defendant.

 Boston was entitled to recover their attorneys' fees under the contract and pursuant to TEX. CIV. PRAC. & REM.CODE ANN. § 38.001 (Vernon 1997).[4] However, attorney's fees are not recoverable in tort actions. *Huddleston v. Pace*, 790 S.W.2d 47, 49 (Tex. App.-San Antonio 1990, writ denied). Because Boston ultimately recovered only on their breach of contract claim against AU and dismissed their tort claims, and because Boston's tort causes of action entailed proof of facts unnecessary for proof of their contract claim, and considering the percentage basis of the award without any evidence that the fees attributable to the breach of contract claim had been segregated, we find the trial court's award of attorneys' fees was an abuse of discretion and must be reversed and remanded. *See Hill*, 964 S.W.2d at 142–43. Because Boston nonsuited their tort claims against Ivy, the fees corresponding with work on those claims should also be segregated on remand. Work performed on the breach of contract claim against Ivy would appear to entail proof of essentially the same facts as the breach of contract claim against AU and may not need to be segregated. AU's third point of error is sustained.

### REASONABLE AND NECESSARY ATTORNEYS' FEES

 First, citing *General Elec. Supply Co. v. Gulf Electroquip, Inc.*, 857 S.W.2d 591, 601 (Tex.App.-Houston [1st Dist.] 1993, writ denied), AU contends that a summary judgment award of attorneys' fees is improper where the nonmovant produces a contravening affidavit regarding fees. It argues that because it introduced the affidavit of Theodore Riney in response to Boston's motion for summary judgment, it created an issue of

---

**4.** TEX. CIV. PRAC. & REM.CODE ANN. § 38.001 (Vernon 1997) reads (in relevant part):

A person may recover reasonable attorney's fees from an individual or corporation, in addi-

tion to the amount of a valid claim and costs, if the claim is for:

. . . .

(8) an oral or written contract.

fact regarding the reasonableness of the fees that precluded the granting of summary judgment under Tex.R. Civ. P. 166a(c).[5]

In response to AU's contention that summary judgment was not proper pursuant to the *General Electric* case because it filed a controverting affidavit, Boston attacks the sufficiency of Riney's affidavit by arguing that it is nothing more than his opinions with no controverting evidence to support it. Citing *Law v. Law*, 792 S.W.2d 150, 151 (Tex. App.-Houston [1st Dist.] 1990, writ denied), they argue that an affidavit which states no facts does not constitute summary judgment evidence. Because Riney's affidavit is no evidence, they argue that there was no controverting evidence to the affidavit of Cox and that the trial court properly granted summary judgment under Rule 166a(c). AU replies that Boston did not object at the summary judgment proceeding to the adequacy of Riney's affidavit and, therefore, waived any error.

The *General Electric* case holds that a summary judgment award of attorney's fees is improper where the nonmovant produces a controverting affidavit regarding fees. Boston's attempt to impeach Riney's affidavit with the *Law* case is not on point. In the *Law* case, the affidavit attached to a response to a motion for summary judgment merely referenced the summary judgment response, stated that all the allegations in the response were true, and did not state any facts itself. The court held that because sworn pleadings do not constitute summary judgment evidence, the response did not present any fact issues to the trial court or preserve any for review. *Law*, 792 S.W.2d at 151. To constitute proper summary judgment evidence under Rule 166a(f), an affidavit must be made on personal knowledge, set forth facts which would be admissible in evidence, and show the affiant's competence. *Fisher v. Yates*, 953 S.W.2d 370, 383 (Tex. App.-Texarkana 1997), *writ denied per curiam*, 41 Tex. Sup.Ct. J. 1404, 1998 WL

652543 (Sept. 24, 1998). The allegations must be direct, unequivocal, and such that perjury is assignable. *Id.*

Here, Riney stated in his affidavit that it was based on his personal knowledge and that he was competent to swear an affidavit. He also stated that he practices in the Dallas area and is familiar with the legal services necessary to handle claims of the type involved in this case, and that applying his knowledge of the time and labor involved, difficulty of the issues presented, the skills requisite to properly conduct the case, customary charges of the Bar, and awards in similar cases, he is of the opinion that $14,000.00 is not a reasonable attorneys' fee for prosecuting this case to summary judgment. Because Boston has not directed us to any place in the record where they objected to the adequacy of Riney's affidavit, and because Riney's affidavit otherwise appears to be proper summary judgment evidence under Tex.R. Civ. P. 166a(f), we hold that a genuine issue of material fact was created as to the reasonableness of the attorneys' fees which precluded the entry of summary judgment on this issue. We sustain AU's first contention under this point of error and reverse the trial court's award of attorneys' fees and remand for a trial on the issue of reasonable and necessary attorneys' fees.

Second, citing *Arthur Andersen & Co. v. Perry Equip. Corp.*, 945 S.W.2d 812, 818 (Tex.1997), AU contends that the mere existence of a contingency fee arrangement is not sufficient to prove the reasonableness of the fees in a breach of contract action as required by Section 38.001 because it does not establish the various factors that should be considered when determining the reasonableness of a fee.

Boston argues that the *Andersen* case is distinguishable from the instant case because it was an action brought under the Texas Deceptive Trade Practices Act and should be limited to its facts. It also argues that the underlying reason for the holding in the *An-*

---

**5.** Tex.R. Civ. P. 166a(c) reads (in relevant part): The judgment sought shall be rendered forthwith if . . . there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. . . . A summary judgment may be based on uncontroverted testimonial evidence of an interested witness . . . if the evidence is clear, positive and direct, otherwise credible and free from contradictions and inconsistencies, and could have been readily controverted.

*dersen* case, that a contingency fee arrangement by itself is insufficient to prove the reasonableness of attorney's fees, is that a jury, without knowing what the total amount of the judgment would be, could only speculate as to whether a percentage of that unknown recovery would present a reasonable and necessary fee in that case. This is not the case here, they argue, because the amount of damages was known to be $140,-000.00 and ten percent of this is $14,000.00, a known amount.

█ The *Andersen* case did arise under the Texas Deceptive Trade Practices Act. However, its holding has been extended to other contexts. *See Lubbock County v. Strube*, 953 S.W.2d 847, 857–58 (Tex.App.-Austin 1997, pet. denied) (extending it to Whistleblower Act); *Purina Mills, Inc. v. Odell*, 948 S.W.2d 927, 940 (Tex.App.-Texarkana 1997, writ denied) (extending it to products liability/negligence/breach of warranty/DTPA). In accord with the *Andersen* case, we hold that a contingent fee agreement should be considered by the fact finder, but cannot alone support an award of attorney's fees, because without evidence of the factors identified in TEX. DISCIPLINARY R. PROF'L CONDUCT 1.04, *reprinted in* TEX. GOV'T CODE ANN., tit. 2, subtit. G app. A (Vernon 1998),[6] the fact finder has no meaningful way to determine if the fees were reasonable and necessary. *Andersen*, 945 S.W.2d at 818–19.

AU also complains that Boston did not produce the contingency fee contract in support of their summary judgment. Boston argues that this failure is not fatal because, pursuant to TEX. CIV. PRAC. & REM.CODE ANN. § 38.004 (Vernon 1997), the trial court is allowed to take judicial notice of the usual and customary attorney's fees and of the contents of the case file without receiving further evidence.

█ A trial court may take judicial notice of usual and customary attorney's fees, and it is presumed, under TEX. CIV. PRAC. & REM. CODE ANN. § 38.003 (Vernon 1997), that such fees are reasonable. *Richards v. Mena*, 907 S.W.2d 566, 573 (Tex.App.-Corpus Christi 1995, writ dism'd by agr.). However, this presumption may be rebutted by competent evidence. *Id.* Here, even if the presumption of reasonable attorney's fees arose, it was rebutted by the competent testimony of Riney's affidavit.

## REPRESENTATIVE CAPACITY

█ AU contends that even though H. Weimar Jones was a party to the contract, Boston has produced no evidence that Wayland Jones, listed in Boston's petition on sworn account as "representative of the Estate of H. Weimar Jones," has legal standing to represent the estate of H. Weimar Jones or to pursue a lawsuit on behalf of the estate of H. Weimar Jones, assuming such estate in fact exists. It argues that no letters testamentary or order appointing an executor was ever appended to the petition or entered into the summary judgment record. Further, it argues that there has been no showing that H. Weimar Jones is deceased. AU maintains that it challenged this defect both in its response to plaintiffs' motion for summary judgment and in its motion for new trial.

Boston responds that AU's complaint deals with the legal *capacity* of Wayland Jones to prosecute a claim for the estate of H. Weimar Jones and not with his *standing*. They argue that TEX.R. CIV. P. 93(1) and (2) require that an attack on the legal capacity of a plaintiff to sue or that the plaintiff is not

6. These factors include:
(1) the time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly;
(2) the likelihood ... that the acceptance of the particular employment will preclude other employment by the lawyer;
(3) the fee customarily charged in the locality for similar legal services;
(4) the amount involved and the results obtained;
(5) the time limitations imposed by the client or by the circumstances;
(6) the nature and length of the professional relationship with the client;
(7) the experience, reputation, and ability of the lawyer or lawyers performing the services; and
(8) whether the fee is fixed or contingent on results obtained or uncertainty of collection before the legal services have been rendered.

entitled to recover in the capacity in which he sues must be made in the form of a verified denial and that the failure to file a verified denial waives any complaint regarding a judgment rendered in the capacity in which the party was sued.

The distinction between "capacity" and "standing" is dispositive of this issue. "Capacity" is a party's legal authority to go into court and prosecute or defend a suit, whereas "standing" is a party's justiciable interest in the suit and is a component of subject matter jurisdiction. *See Nootsie, Ltd. v. Williamson County Appraisal Dist.,* 925 S.W.2d 659, 661 (Tex.1996). TEX.R. CIV. P. 93 reads (in relevant part):

> A pleading setting up any of the following matters, unless the truth of such matters appear of record, shall be verified by affidavit.
>
> 1. That the plaintiff has not legal capacity to sue or that the defendant has not legal capacity to be sued.
>
> 2. That the plaintiff is not entitled to recover in the capacity in which he sues, or that the defendant is not liable in the capacity in which he is sued.

If a plea under Rule 93(1) or (2) is not raised in a verified pleading, the issue is waived and not properly preserved for appeal. *Estate of Crawford v. Town of Flower Mound,* 933 S.W.2d 727, 731 (Tex.App.-Fort Worth 1996, writ denied). As stated in *Pledger v. Schoellkopf,* 762 S.W.2d 145, 146 (Tex.1988): "When capacity is contested, Rule 93(2) requires that a verified plea be filed anytime the record does not affirmatively demonstrate the plaintiff's or defendant's right to bring suit or be sued in *whatever* capacity he is suing. Its application is not limited to cases of representative capacity only. The rule means just what it says." (Citation omitted.). Further, "The 'capacity' addressed in rule 93(c)[7] ... is the standing of a party to assert or defend the action before the court.

Capacity, or standing, as used in the rule, relates to instances such as an administrator's right to prosecute a decedent's cause of action, . . . ." *Conrad v. Artha Garza Co.,* 615 S.W.2d 238, 240 (Tex.Civ.App.-Dallas 1981, no writ). Further, assertions that the cause of action brought by the plaintiff is owned by another party must be raised by a verified denial. *Matthiessen v. Schaefer,* 900 S.W.2d 792, 795 (Tex.App.-San Antonio 1995, writ denied).

One of AU's complaints is that the record does not affirmatively demonstrate Wayland Jones' right to bring suit in the capacity as "representative of the Estate of H. Weimar Jones." They also assert that the cause of action is actually owned by someone else until proven otherwise. AU therefore challenges legal capacity, and not standing, which must be made by verified denial. Having made no verified denial, AU has waived the issue and there is nothing for appeal. AU's fifth point of error is overruled.

### DAMAGES FOR DELAY

Boston contends that AU's conduct has been to delay payment of the $140,000.00 owed them as opposed to challenging such payment. Therefore, Boston asks for further damages under TEX.R.APP. P. 84 (Vernon 1997) (now TEX.R.APP. P. 45[8]). Boston has not directed us to evidence in the record to support their contention. In the absence of such evidence, we must deny this relief.

### SUMMARY

For the reasons stated above, we reverse that portion of the court's summary judgment awarding attorneys' fees. We sever Boston's claims for such fees and remand them for trial, consistent with this opinion. We sustain AU's objections to the trial court's awards of prejudgment and postjudgment interest, and we reform the trial court's judgment, striking all such recovery and ordering prejudgment and postjudgment

---

7. TEX.R. CIV. P. 93(c) is now found at TEX.R. CIV. P. 93(2).

8. TEX. R. APP. P. 45 reads:
 If the court of appeals determines that an appeal is frivolous, it may-on motion of any party or on its own initiative, after notice and a reasonable opportunity for response-award each prevailing party just damages. In determining whether to award damages, the court must not consider any matter that does not appear in the record, briefs, or other papers filed in the court of appeals.

interest at the rate of zero percent. The remainder of the trial court's summary judgment, as reformed, is affirmed.