**Motion for Rehearing Denied, Affirmed, and Substitute Opinion filed August 14, 2012.**



In The

# Fourteenth Court of Appeals

---

### NO. 14-11-00004-CV

---

### CAJUN CONSTRUCTORS, INC., Appellant

### V.

### VELASCO DRAINAGE DISTRICT, Appellee

---

**On Appeal from the 412th District Court**
**Brazoria County, Texas**
**Trial Court Cause No. 61420**

---

## S U B S T I T U T E   O P I N I O N

We deny Cajun Constructors, Inc.'s motion for rehearing, withdraw our majority opinion of July 10, 2012, and issue the following substitute opinion.

In this contract dispute, appellant Cajun Constructors, Inc. ("Cajun") appeals from the trial court's summary judgment in favor of appellee Velasco Drainage District ("Velasco") and a jury's subsequent award of attorney's fees to Velasco. Cajun asserts that the trial court erred in granting summary judgment to Velasco because (1) Cajun complied with the notice requirements in the contract at issue or raised a fact issue with regard to the notice issue, (2) the notice provisions in the contract are legally void, and

(3) Cajun's unjust enrichment claim was improperly dismissed. Cajun further contends that the jury should not have been given an attorney's fee question because Velasco did not recover damages and that Velasco was not entitled to recover attorney's fees because it failed to segregate the fees.[1] We affirm.

## BACKGROUND

In September 2005, Velasco contracted with Cajun to provide labor and materials for the expansion of a pump station located in Brazoria County, Texas (the "project"). The original contract price was $12,974,000. Velasco concurrently contracted with Patterson Pump Company ("Patterson) to provide certain pumps, pump shafts, coupling nuts, and other materials for Cajun to install at the project. Patterson also supplied instructions for Cajun's installation of the equipment. Cajun subcontracted its installation responsibilities to Louisiana Crane Company, L.L.C. ("Louisiana Crane").

Velasco's contract with Cajun (the "contract") specified an agreed completion date; if Cajun failed to complete the project on time, Cajun agreed to pay liquidated damages of $750 per day. The contract also specified certain dispute resolution procedures under the Standard General Conditions of the Construction Contract (the "general conditions"):

10.05 Claims and Disputes

A.     Notice:  Written notice stating the general nature of each Claim, dispute, or other matter shall be delivered by the claimant to ENGINEER and the other party to the Contract promptly (but in no event later than 30 days) after the start of the event giving rise thereto. Notice of the amount or extent of the Claim, dispute, or other matter with supporting data shall be delivered to the ENGINEER and the other party to the Contract within 60 days after the start of such event (unless ENGINEER allows additional time for claimant to submit additional or more accurate data in support of such

---

[1] For the first time in its motion for rehearing, Cajun asserts that Velasco is not entitled to attorney's fees based on its status as a governmental entity. Even if Cajun is correct, it never presented this argument to the trial court, nor did it raise it in its appellate briefs. As such, Cajun has raised this issue too late for our consideration. *See Harris County v. Nagel*, 349 S.W.3d 769, 790 (Tex. App.—Houston [14th Dist.] 2011, pet. filed) (subst. op.); *FCLT Loans, L.P. v. Estate of Bracher*, 93 S.W.3d 469, 485 n.14 (Tex. App.—Houston [14th Dist.] 2002, no pet.).

Claim, dispute, or other matter). A Claim for an adjustment in Contract price shall be prepared in accordance with the provisions of paragraph 12.01.B. A Claim for an adjustment in Contract Time shall be prepared in accordance with the provisions of paragraph 12.02B. Each claim shall be accompanied by claimant's written statement that the adjustment claimed is the entire adjustment to which the claimant believes it is entitled as a result of said event. The opposing party shall submit any response to ENGINEER and the claimant within 30 days after receipt of the claimant's last submittal (unless ENGINEER allows additional time).

B. ENGINEER'S Decision: ENGINEER will render a formal decision in writing within 30 days after receipt of the last submittal of the claimant or the last submittal of the opposing party, if any. ENGINEER's written decision on such Claim, dispute, or other matter will be final and binding upon OWNER and CONTRACTOR unless:

1. An appeal from ENGINEER's decision is taken within the time and in accordance with the dispute resolution procedures set forth in Article 16; or

2. If no such dispute resolution procedures have been set forth in Article 16,[2] a written notice of intention to appeal from ENGINEER's written decision is delivered by OWNER or CONTRACTOR to the other and to ENGINEER within 30 days after the date of such decision, and a formal proceeding is instituted by the appealing party in a forum of competent jurisdiction within 60 days after the date of such decision or within 60 days after Substantial Completion, whichever is later (unless otherwise agreed in writing by OWNER and CONTRACTOR), to exercise such rights or remedies as the appealing party may have with respect to such Claim, dispute, or other matter in accordance with applicable Laws and Regulations.

C. If ENGINEER does not render a formal decision in writing within the time stated in paragraph 10.05.B, a decision denying the Claim in its entirety shall be deemed to have been issued 31 days after receipt of the last submittal of the claimant or the last submittal of the opposing party, if any.

---

[2] Article 16, entitled "Dispute Resolution," states:

Dispute resolution methods and procedures, if any, shall be as set forth in the Supplementary Conditions. If no method and procedure has been set forth, and subject to the provisions of paragraphs 9.09 and 10.05, OWNER and CONTRACTOR may exercise such rights or remedies as either may otherwise have under the Contract Documents or by Laws or Regulations in respect of any dispute.

The Supplementary Conditions of the Contract do not set forth any dispute methods and procedures.

D.     No claim for an adjustment in Contract Price or Contract Times (or Milestones) will be valid if not submitted in accordance with this paragraph 10.05.

On May 16, 2008, Cajun filed Claim #1 – 96" Pump Sole Plate Grout Removal and Replacement, a claim for an adjustment in contract price of $139,157.00.   On September 5, 2008, Baker Lockwood JV, the Engineer referenced in the contract, denied this claim.   On July 2, 2008, Cajun filed Claim #2 – Coupling Nut Removal and Installation, another claim for an adjustment in contract price of $163,540.00.   Baker Lockwood denied this claim also on September 5, 2008.   On August 5, 2008, Cajun submitted a revised Claim #3 – Fabrication Problems with the Patterson Pump Equipment, a claim for an adjustment in contract price of $68,164.00.[3]   On September 10, 2008, Baker Lockwood rejected part of this claim, but recommended that Velasco approve an adjustment in contract price of $5,387.00 for this claim.   On July 2, 2008, Cajun submitted Claim #4 – Time Impact Analysis, a claim for an adjustment in contract time of an additional 373 calendar days.   Also on September 10, 2008, Baker Lockwood rejected the bulk of this claim, but recommended that Velasco approve an adjustment in contract time of an additional 30 days.

The project was substantially completed on May 23, 2008, which was 275 days later than the extended completion date.[4]   After final completion of the project, Velasco withheld $206,250.00 (275 days x $750/day) from the final contract payment as liquidated damages.

This dispute arose in February 2008 when Cajun sued Louisiana Crane for breach of contract and negligence and later added claims against Patterson for negligence. Subsequently, the trial court dismissed Louisiana Crane due to a forum selection clause in the contract between Cajun and Louisiana Crane.   On October 10, 2008, Cajun amended its petition to add Velasco as a defendant, seeking the money Velasco had withheld from Cajun's final contract payment under theories of breach of contract and quantum meruit.

_____

[3] The record reflects that Claim #3 originally was filed on July 2, 2008.

[4] Cajun requested and was granted 62 extra days to complete the project.

4

Velasco answered Cajun's petition, asserting as is relevant here the following affirmative defenses: (a) Cajun's quantum meruit claim is barred by the existence of a contract between the parties; and (b) Cajun's contract claims are barred by its own prior material breach of the parties' contract. Velasco further alleged that Cajun had failed to perform all condition precedents to suit, including failing to comply with the notice and claim requirements and procedures of the parties' contract. Velasco stated that because it is a governmental entity, Cajun's damage claims are limited to those statutorily authorized by the Local Government Code. Finally, Velasco counterclaimed for breach of contract against Cajun.

Velasco filed a summary-judgment motion, but Cajun amended its petition on October 2, 2009 to include additional claims that Velasco breached its contract by failing to pay for the four claims submitted by Cajun to Velasco described above. Cajun sought $406,000.00 in damages associated with Claim No. 4.

In April 2010, Velasco filed an amended motion for summary judgment. The amended motion addressed all of Cajun's claims against Velasco and also sought severance of Cajun's claims against Velasco. In the motion, Velasco alleged that Cajun failed to follow the general conditions notice provisions, excerpted above, in seeking to recover on its claims. Specifically, it asserted that Cajun failed to meet all three of the deadlines provided by the contract, including the requisite written notification of a claim within 30 days of the event, notice of the amount or extent of the claim with supporting data within 60 days after the start of the event, and written notice of its intent to appeal from the Engineer's final written decision within 30 days. Velasco also requested attorney's fees as the "prevailing party" on a contract action and severance of Cajun's claims against Velasco if the motion were granted.

Cajun responded to Velasco's summary-judgment motion. It asserted that Velasco could not prove the untimely notifications because, as to claims 3 and 4, George Kidwell, Velasco's chairman, testified during his deposition that he had no opinion regarding the start of the events giving rise to these claims. Cajun further contended that because much

5

of Kidwell's affidavit was based on an errata sheet to his deposition, it should be entirely disregarded. Cajun argued that it submitted some of its claims in conformance with the contract through email notifications. It stated that the only condition precedent to filing suit under the contract and general conditions was conformance with article 9, section 9.09(B) of the general conditions, which provides:

> The rendering of a decision by ENGINEER pursuant to paragraph 9.09 with respect to any such Claim, dispute, or other matter . . . will be a condition precedent to any exercise by OWNER OR CONTRACTOR of such rights or remedies as either may otherwise have under the Contract Documents or by Law or Regulations in respect of any such claim, dispute, or other matter.

Cajun asserted that it had complied with this contract term because it waited until the Engineer had denied its claims before filing suit. Cajun asserted that its failure to comply with the notice provisions of section 10.05 of the general provisions did not bar its breach of contract action against Velasco because it brought its claim within the statute of limitations for a contract action and it met the condition precedent of section 9.09(B) of the general provisions. Cajun also challenged Velasco's request for attorney's fees as excessive.

On August 10, 2010, the trial court granted Velasco's first amended summary-judgment motion except as to Velasco's claims for attorney's fees, which it stated would be tried at a later date. A jury trial was conducted on attorney's fees the week of December 13, 2010. The jury found that a reasonable fee for the necessary services of Velasco's attorneys for preparation and trial was $225,000.00, for an appeal to the court of appeals was $20,000.00, for filing a petition for review in the Supreme Court was $10,000.00, for filing a brief on the merits in the Supreme Court was $10,000.00, and for arguing before the Supreme Court was $5,000.00. On December 22, 2010, the trial court signed a final judgment in which it granted Velasco's prior motion for severance, ordered that Velasco was entitled to retain the parties' unpaid contract balance in the sum of $206,250.00, ordered that Velasco was entitled to recover attorney's fees under Chapter 38 of the Civil Practice and Remedies Code in the sum of $225,000.00, awarded

judgment for successfully making or responding to an appeal in the amounts found by the jury as reasonable, and awarded Velasco costs of court and post-judgment interest. This appeal timely followed.

## THE PARTIAL SUMMARY JUDGMENT

### A.      Standard of Review and Applicable Law

We review a trial court's summary judgment *de novo*. *Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 661 (Tex. 2005). In reviewing a summary judgment, we take as true all evidence favorable to the nonmovant, indulging every reasonable inference, and we resolve any doubts in the nonmovant's favor. *Nixon v. Mr. Prop. Management Co.*, 690 S.W.2d 546, 549 (Tex. 1985). Where, as here, the trial court grants the judgment without specifying the grounds, we affirm the summary judgment if any of the grounds presented are meritorious. *FM Props. Operating Co. v. City of Austin*, 22 S.W.3d 868, 872–873 (Tex. 2000). "Issues not expressly presented to the trial court by written motion, answer or other response shall not be considered on appeal as grounds for reversal." Tex. R. Civ. P. 166a(c). In a traditional motion for summary judgment, if the movant's motion and summary judgment evidence facially establish its right to judgment as a matter of law, the burden shifts to the nonmovant to raise a genuine, material fact issue sufficient to defeat summary judgment. *M.D. Anderson Hosp. & Tumor Inst. v. Willrich*, 28 S.W.3d 22, 23 (Tex. 2000).

Finally, the law in regard to contract interpretation is clear and well-settled. The interpretation of an unambiguous contract is a question of law, which is reviewed *de novo*. *MCI Telecomms. Corp. v. Tex. Utils. Elec. Co.*, 995 S.W.2d 647, 650–51 (Tex. 1999). With these principles in mind, we turn to the trial court's partial summary judgment on Cajun's breach of contract and quantum meruit claims.

### B.      Analysis

Cajun challenges the partial summary judgment on three grounds: (1) it complied with the contractual notice requirements or at minimum raised a fact issue regarding

7

whether it complied with the notice provisions; (2) the contractual notice provisions are void pursuant to section 16.071 of the Texas Civil Practice & Remedies Code; and (3) Cajun's quantum meruit claim was improperly dismissed on summary judgment. Of these three issues, only the first was presented to the trial court. Because Cajun did not present either its second or third issues to the trial court, we may not consider these arguments on appeal as grounds for reversal. *See* Tex. R. Civ. P. 166a(c); *Taylor v. Louis*, 349 S.W.3d 729, 737 (Tex. App.—Houston [14th Dist.] 2011, no pet.). We accordingly address only Cajun's first issue: whether it complied with the notice provisions or raised a fact issue regarding its alleged compliance with these provisions.

As excerpted above, the general provisions of the contract contain three notice requirements. First, a party must provide written notice stating the general nature of any claim or dispute no later than 30 days after the start of the event giving rise to the claim to the Engineer and the other party. Second, notice of the amount or extent of the claim or dispute with supporting data must be delivered to the Engineer and other party within 60 days after the start of the event, unless the Engineer provides additional time for the claimant to submit additional or more accurate data in support of the claim or dispute. Finally, third, after the Engineer renders a formal written decision regarding the claim or dispute, the party who intends to appeal the Engineer's decision must file a written notice of intent to appeal to the Engineer and the other party within 30 days after the date of the Engineer's decision. It is undisputed in this case that Cajun failed to file any notice of intent to appeal to either the Engineer or Velasco.

Cajun, however, asserts that these notice provisions are not conditions precedent to suit. Instead, it contends that the only condition precedent to suit is a formal written decision by the Engineer as stated in section 9.09B of the general provisions, excerpted above. A condition precedent may be either a condition to the formation of a contract or to an obligation to perform an existing agreement. *Hohenberg Bros. Co. v. George E. Gibbons & Co.*, 537 S.W.2d 1, 3 (Tex. 1976). Conditions may, therefore, relate to either the formation of contracts or to liability under them. *Id.* Conditions precedent to an

8

obligation to perform are those acts or events which occur subsequent to the making of a contract and which must occur before there is a right to immediate performance and before there is a breach of a contractual duty. *Id.* If the condition is not fulfilled, the contract or obligation attached to the condition cannot be enforced. *CDI Eng'g Group, Inc. v. Admin. Exch., Inc.*, 222 S.W.3d 544, 548 (Tex. App.—Houston [14th Dist.] 2007, pet. denied).

Although the term "condition precedent" is not used in section 10.05, subsection 10.05D states: "*No* claim for an adjustment in Contract Price or Contract Times (or Milestones) will be valid *if not submitted* in accordance with this paragraph 10.05." (emphasis added). Despite the fact that conditions precedent are disfavored such that courts will not construe a contract provision as a condition precedent unless compelled to do so by language that may be construed no other way, we conclude that this language constitutes a condition precedent. *See Criswell v. European Crossroads Shopping Ctr.*, 792 S.W.2d 945, 948 (Tex. 1990) (holding that terms such as "'if,' 'provided that,' 'on condition that,' or some similar phrase of conditional language must normally be included" to create a condition precedent). To construe this clause as anything other than a condition precedent would be to ignore its plain language. *Cf. T.F.W. Mgmt., Inc. v. Westwood Shores Prop. Owners Ass'n*, 162 S.W.3d 564, 570 (Tex. App.—Houston [14th Dist.] 2004, no pet.) (noting that although conditions precedent are harsh in operation, court cannot ignore plain language of a contract to avoid such harshness).

A party seeking to recover under a contract bears the burden of proving that all conditions precedent have been satisfied. *Assoc. Indem. Corp. v. CAT Contracting, Inc.*, 964 S.W.2d 276, 283 (Tex. 1998). Because Cajun did not comply with section 10.05's notice requirements, particularly the requirement that it notify both the Engineer and Velasco of its intent to appeal the Engineer's decision, it failed to satisfy the conditions precedent to suing Velasco for breach of contract. *See id.*; *CDI Eng'g Group, Inc.*, 222 S.W.3d at 548. Further, because it is undisputed that Cajun failed to notify either the Engineer or Velasco that it intended to appeal the Engineer's decision, Cajun did not

9

raise a fact issue on this matter. Accordingly, Velasco established it was entitled to summary judgment on this issue, and we overrule Cajun's issues related to the partial summary judgment.

## ATTORNEY'S FEES

### A. Standard of Review and Applicable Law

Texas law prohibits recovery of attorney's fees unless authorized by statute or contract. *Tony Gullo Motors I, L.P. v. Chapa*, 212 S.W.3d 299, 310 (Tex. 2006). "Reasonable" attorney's fees are available to a prevailing party on a breach of contract claim. Tex. Civ. Prac. & Rem. Code Ann. § 38.001(8) (West 2008). We review an award of attorney's fees on the basis of breach of contract for an abuse of discretion. *AU Pharm. Inc. v. Thornton*, 986 S.W.2d 331, 337 (Tex. 1996). The test for an abuse of discretion is whether the trial court's decision is arbitrary or unreasonable. *Id.*

If any attorney's fees relate solely to claims for which fees are not recoverable, a claimant must segregate recoverable from unrecoverable fees. *Tony Gullo Motors I*, 212 S.W.3d at 313. "Intertwined facts do not make all attorney's fees recoverable; it is only when discrete legal services advance both a recoverable and unrecoverable claim that they are so intertwined that they need not be segregated." *Id.* at 313–14. With these principals in mind, we turn to Cajun's attorney's fee issues.

### B. Analysis

In Cajun's fourth and fifth issues, it challenges the award of attorney's fees to Velasco. Specifically, in its fourth issue, it asserts that the jury should not have been given a question on the award of attorney's fees at all because Velasco did not recover damages; rather, Velasco retained the liquidated damages authorized by the contract by not paying Cajun the full contract price. However, Cajun did not challenge the award of attorney's fees on this basis in the trial court. It neither contended in its summary-judgment response that Velasco was not entitled to attorney's fees, nor challenged attorney's fees on this basis in the jury trial on fees. The only challenge it made to the

10

submission of the attorney's fee question to the jury was that Velasco had not submitted legally or factually sufficient evidence to support the submission:

> We would object to the submission of the issue of attorneys' fees because while the admitted failure to segregate attorneys' fees on the part of the Plaintiff, they have not submitted legally sufficient or factually sufficient evidence to support this submission. So we will object to the submission of Question 1 on that basis and further move for an instructed verdict of a take nothing recovery on attorney fees at this time.

This objection does not comport with its complaint on appeal. *See Lundy v. Masson*, 260 S.W.3d 482, 507 (Tex. App.—Houston [14th Dist.] 2008, pet. denied) (citing *State Dep't of Highways & Pub. Transp. v. Payne*, 838 S.W.2d 234, 241 (Tex. 1992)). Accordingly, this issue has not been preserved for our review, and it is overruled. *See id.*; Tex. R. App. P. 33.1(a).

In its fifth issue, Cajun asserts that Velasco was not entitled to recover attorney's fees because it failed to segregate the fees. The reporter's record reflects that Cajun proposed a jury instruction on the issue of segregation of attorney's fees and objected to the submission of a question without such segregation: "Your Honor, Cajun has proposed, if I may approach, an instruction to the jury on the issue of segregation. We would object to the submission of a question without segregation and we would submit Cajun's proposed instruction to mitigate the issue of failure to segregate." The trial court refused the requested instruction.

Here, all the claims at issue before the jury involved Velasco's successful breach-of-contract counterclaim. Cajun's claims and Velasco's counterclaim depended upon the same essential facts, using the same documents and witnesses, and Velasco had to defeat Cajun's claims "before it could recover." *See Tony Gullo Motors I*, 212 S.W.3d at 314. Even Velasco's defense to Cajun's quantum meruit claim was premised on the existence of the contract. Cajun's quantum meruit claim arose out of the same transactions as its contract-based claims and required the same proof as those claims. Hence, the legal work performed by Velasco's attorneys advanced both the prosecution of its breach-of-contract counterclaim and the defense of Cajun's claims, including Cajun's quantum meruit claim.

11

The legal work performed by Velasco's attorneys advanced both recoverable and nonrecoverable claims. *See id.* at 313–14; *cf. 7979 Airport Garage, L.L.C. v. Dollar Rent a Car Sys., Inc.*, 245 S.W.3d 488, 507–09 (Tex. App.—Houston [14th Dist.] 2007, pet. denied) (concluding that fees incurred in defending against counterclaims did not have to be segregated from those incurred in prosecuting breach-of-contract claim because claims and counterclaims depended on same essential facts, relied on same documents and witnesses, and appellee had to defeat appellant's claims before it could recover). Under these circumstances, we conclude that Velasco was not required to segregate its attorney's fees. We overrule Cajun's fifth and final issue.

## CONCLUSION

We have overruled Cajun's first and fifth issues. We have further concluded that Cajun failed to preserve its second, third, and fourth issues. Thus, these issues are also overruled. Having overruled each of Cajun's five issues, we affirm the trial court's judgment.


/s/ Adele Hedges
   Chief Justice


Panel consists of Chief Justice Hedges and Justices Christopher and Jamison.

12