# United States Court of Appeals for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

April 23, 2025

Lyle W. Cayce
Clerk

No. 21-20345

Equistar Chemicals, L.P.,

*Plaintiff—Appellee/Cross-Appellant*,

*versus*

Indeck Power Equipment Company,

*Defendant—Appellant/Cross-Appellee*.

Appeal from the United States District Court
for the Southern District of Texas
USDC 4:19-CV-3757

Before Richman and Ho, *Circuit Judges*.[*]

Priscilla Richman, *Circuit Judge*:[**]

This dispute arises out of a contract between Equistar Chemicals, L.P. and Indeck Power Equipment Company for two industrial steam boilers. The district court concluded that Indeck breached the contract and several warranties, and it awarded Equistar $644,859 in damages. We affirm.

---

[*] Judge Gregg Costa was a member of the panel but resigned from the court after oral arguments were heard. This case is decided by a quorum under 28 U.S.C. § 46(d).

[**] This opinion is not designated for publication. *See* 5th Cir. R. 47.5.

No. 21-20345

## I

Equistar and Indeck signed a "Master Contract" in December 2015. Indeck agreed to provide two steam boilers, related equipment, and installation and start-up services at Equistar's plant in Tuscola, Illinois.

Several setbacks delayed the boilers' installation and start-up. It took more than an extra month for Equistar to receive the boilers because Indeck did not release customs paperwork for the boilers' shipment across the Canadian border. Equistar paid an additional month of railcar rental charges during the wait. Once the boilers arrived, the parties had planned on thirty-six days of work for Indeck's service technicians to complete the installation. But it ended up taking 186 days to fix multiple defects. Relevant here, several of the boilers' components were defectively manufactured. This led Indeck's service technicians to spend substantial time addressing problems that should not have arisen or should have been remedied before Indeck delivered the equipment to Equistar. Indeck also had to redo the work of one of its technicians, further extending the setup process.

Equistar sued Indeck in the Southern District of Texas. It asserted claims for breach of contract and warranty and sought reimbursement for the costs it incurred to remedy the boilers' defects. After a bench trial, the district court issued a decision applying Texas law that concluded Indeck breached its warranties for several boiler components. The district court also concluded that Indeck breached the Master Contract due to the excessive rework performed by its technicians as well as the one-month shipping delay.

The district court awarded $644,859 in damages to Equistar. Of that total, $600,859 was for the labor-related issues, and $44,000 was for the shipping delay. Indeck filed a Rule 59 motion for a new trial, which the court denied. This appeal followed.

No. 21-20345

## II

Indeck raises four challenges. "When reviewing a bench trial, we test the district court's findings of fact for clear error and its legal conclusions de novo."[1] The parties agree that Texas law governs this dispute.[2]

## A

We begin with Indeck's argument that the Master Contract incorporated a support-labor clause from the Domestic Field Service Rate Sheet (the Rate Sheet). Indeck asserts that this clause prevents Equistar's recovery of all labor-related damages. The clause specifies that "[a]ll labor including, but not limited to, standby labor, initial check-out, start-up, and testing required to assist the Field Service Consultant at any time, shall be supplied by [Equistar] at no cost to Indeck." The district court determined that Indeck's Rate Sheet did not modify the Master Contract, so it was not binding. Indeck argues that the court erred because the Rate Sheet was part of the Master Contract from the beginning, not a subsequent modification. It contends that the clause bars Equistar's recovery of its labor-related damages.

We need not determine whether the Master Contract incorporated the Rate Sheet because, even if it did, the support-labor clause does not bar Equistar's recovery. The labor-related damages at issue are the extra work that Indeck's technicians performed due to Indeck's warranty and contract breaches, not the original work to install and start-up the boilers. Under Texas law, parties may contractually limit the damages that are recoverable.[3]

---

[1] *Conn Credit I, L.P. v. TF LoanCo III, L.L.C.*, 903 F.3d 493, 499 (5th Cir. 2018).

[2] *See id.* (applying Texas law in similar circumstances because "[t]he parties d[id] not dispute the district court's conclusion that Texas law govern[ed] this case").

[3] *Glob. Octanes Tex., L.P. v. BP Expl. & Oil Inc.*, 154 F.3d 518, 523 (5th Cir. 1998).

That did not happen in the support-labor clause. The clause simply addresses who must supply the labor to assist Indeck with the boilers' setup, not who is responsible for damages in the event of a breach.

**B**

Indeck argues that Article 8(b) of the Master Contract required Equistar to dispute Indeck's invoices in writing before Equistar sued for breach. Article 8(b) provides:

> In the event [Equistar] disputes any invoice amount, [Equistar] may . . . without waiver of any of its rights, including the right to seek reimbursement, pay the disputed amount and later seek reimbursement. In the event of a dispute, the Parties will promptly attempt to resolve the dispute . . . .

Additionally, Article 24 requires that "all notices . . . shall be in writing." Indeck contends that the notice requirement was a condition precedent to Equistar suing for breach and that because Equistar did not dispute any invoices in writing, its damages claims are barred.

Under Texas law, "[a] condition precedent is 'an event that must happen or be performed before a right can accrue to enforce an obligation.'"[4] "[T]he conditional language must connect the condition precedent to the conditioned obligation."[5] "In order to make performance specifically conditional, a term such as 'if', 'provided that', 'on condition that', or some similar phrase of conditional language must normally be included."[6] "If no

---

[4] *Conn Credit I*, 903 F.3d at 500 (quoting *Associated Indem. Corp. v. CAT Contracting, Inc.*, 964 S.W.2d 276, 283 (Tex. 1998)).

[5] *Arbor Windsor Ct., Ltd. v. Weekley Homes, LP*, 463 S.W.3d 131, 137 (Tex. App.—Houston [14th Dist.] 2015, pet. denied).

[6] *Conn Credit I*, 903 F.3d at 500 (quoting *Solar Applications Eng'g, Inc. v. T.A. Operating Corp.*, 327 S.W.3d 104, 109 (Tex. 2010)).

such language is used, the terms will be construed as a covenant in order to prevent a forfeiture."[7]

We agree with the district court that Article 8(b) does not contain a condition precedent. Assuming without deciding that Article 8(b) has a notice requirement that Equistar did not fulfill, there is no conditional language connecting that notice requirement to Equistar's ability to seek a contractual remedy. Article 8(b) does not use the words "if," "provided that," "on the condition that," "prior to," or any other similar phrase to create a condition. It also does not limit Equistar's ability to exercise its contractual remedies. In other words, there is no link between a condition precedent (notice) and a conditioned obligation (suing for breach of warranty or contract).[8] Any lack of notice does not affect Equistar's damages award.

## C

Indeck argues that Equistar took control of Indeck's subcontractor, Vega, when Equistar worked with Vega to repair several defects. The district court determined that Vega defectively manufactured several boiler components, causing $93,965 in damages to Equistar. Indeck concedes that Vega was its subcontractor when it designed, manufactured, delivered, and installed the components. Indeck also does not dispute that the components were defective. Nevertheless, it argues that Equistar is estopped from suing under Texas law, or that Equistar is barred from recovery under the Master

---

[7] *Criswell v. Eur. Crossroads Shopping Ctr., Ltd.*, 792 S.W.2d 945, 948 (Tex. 1990).

[8] *See Arbor Windsor Ct.*, 463 S.W.3d at 137-41 (holding that a contract created a condition precedent because it included conditional language linking the ability to exercise contractual remedies to a notice requirement); *Cajun Constructors, Inc. v. Velasco Drainage Dist.*, 380 S.W.3d 819, 826 (Tex. App.—Houston [14th Dist.] 2012, pet. denied) (same).

Contract, because Equistar took "total control" over Vega during the repairs.

Indeck forfeited its argument that Equistar's claims are estopped under Texas law. We cannot locate any evidence that Indeck made this argument before its Rule 59 motion for a new trial. "This court will typically not consider an issue or a new argument raised for the first time" in a Rule 59 motion.[9] There is an exception to that rule when the lower court "consider[s]" the Rule 59 argument's merits.[10] Here, however, the district court never addressed the merits of Indeck's estoppel argument.

Turning to whether the Master Contract bars recovery, we agree with the district court that no provision in the parties' agreement bars Equistar's recovery. Article 16 provides that none of Indeck's subcontractors "shall be deemed for any purpose to be the employee, agent, servant, or representative of [Equistar]." It also states that "[Equistar] shall have no direction or control of [Indeck] or its employees, agents and Subcontractors, except in the results to be obtained." As the lower court reasoned, Article 16 does not state that Equistar cannot recover damages if it exercises control over Vega to remedy a breach. The Master Contract's definition of "Subcontractor" as a "third party providing services to [Indeck]" also does not prevent Equistar's recovery. As discussed, Indeck concedes that Vega was its subcontractor when it designed and manufactured the boiler components.

## D

Lastly, Indeck contends that the district court incorrectly awarded damages for the shipping delay because the court had no legal basis to

---

[9] *U.S. Bank Nat'l Ass'n v. Verizon Commc'ns, Inc.*, 761 F.3d 409, 425 (5th Cir. 2014).

[10] *Am. Elec. Power Co. v. Affiliated FM Ins. Co.*, 556 F.3d 282, 287 (5th Cir. 2009).

determine whether that delay was "efficient." The court found that Indeck intentionally delayed releasing customs paperwork for the boilers' shipment, adding one month to Equistar's railcar rental charges. It concluded that Indeck breached Article 13(w)(i) of the Master Contract by providing Equistar with inefficient transportation services. Article 13(w)(i) states that Indeck agrees to "provide Materials and Services in a good, efficient and safe manner."

The district court determined that "efficient" means "produc[ing] a desired outcome within a reasonable and usual or customary time, and within reasonable and usual or customary efforts." That definition was not disputed. Instead, Indeck argues that there is no record evidence supporting that a one-month delay is unreasonable. We disagree. There was evidence at trial that Indeck intentionally withheld the customs paperwork to gain leverage during contract negotiations. We see no reason to disturb the district court's conclusion that Indeck's intentional delay was inefficient.

*    *    *

The district court's judgment is AFFIRMED.