ACCEPTED
14-10-00708-CV
FOURTEENTH COURT OF APPEALS
HOUSTON, TEXAS
7/13/2015 11:06:10 AM
CHRISTOPHER PRINE
CLERK

# No. 14-10-00708-CV

_____

FILED IN
14th COURT OF APPEALS
HOUSTON, TEXAS
7/13/2015 11:06:10 AM
CHRISTOPHER A. PRINE
Clerk

# In the Court of Appeals for the Fourteenth District of Texas, at Houston

_____

Port of Houston Authority of Harris County, Texas,
*Appellant*,

v.

Zachry Construction Corporation,
*Appellee.*

On appeal from the 151st District Court of Harris County, Texas Trial Court Cause No. 2006-72970

## Post-Remand Supplemental Reply Brief of Appellant
_____

David E. Keltner
State Bar No. 11249500
KELLY HART & HALLMAN LLP
201 Main Street, Suite 2500
Fort Worth, Texas  76102
Phone:  817.878.3560
Fax:  817.878.9760
david.keltner@kellyhart.com

David H. Brown
State Bar No. 03109200
BROWN & KORNEGAY LLP
2777 Allen Parkway, Suite 977
Houston, Texas 77019
Phone:  713.528.3703
Fax:  713.528.3701
dbrown@bkllp.com

Marie R. Yeates
State Bar No. 22150700
Catherine B. Smith
State Bar No. 03319970
Michael A. Heidler
State Bar No. 24059921
VINSON & ELKINS L.L.P.
1001 Fannin, Suite 2500
Houston, Texas 77002
Phone: 713.758.4576
Fax:  713.615.5544
myeates@velaw.com

Karen L.T. White
State Bar No. 20274500
KAREN L.T. WHITE, P.C.
1415 S. Voss, Suite 110-539
Houston, Texas 77057
Phone: 832.646.4667
karen@kltwpc.com

***Attorneys for Appellant the Port of Houston Authority of Harris County, Texas***

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ............................................................................. v

RECORD REFERENCES ............................................................................ viii

INTRODUCTION ......................................................................................... 1

ARGUMENT .................................................................................................. 2

   I.    Liability Findings Fail as a Matter of Law. .................................................. 2

       A.    PHA did not breach §5.10. ................................................................. 2

           1.    Contract's plain language authorized the R&R response. ......... 2

           2.    No Contract provision Zachry cites supports Zachry's argument that the R&R response breached §5.10. ..................... 3

               a.    §5.10's plain language defeats Zachry's argument. ........ 3

               b.    §5.22's plain language defeats Zachry's argument. ........ 4

               c.    Tech.Spec.02161's plain language defeats Zachry's argument. .......................................................... 5

               d.    §4.07's plain language defeats Zachry's argument. ........ 6

       B.    The finding that PHA breached CO4 also fails as a matter of law. .................................................................................................. 6

       C.    Zachry has no answer to the charge error. ......................................... 8

  II.    The <u>Damages</u> Finding Fails as a Matter of Law. ......................................... 9

       A.    Draper assumed <u>no time</u> to remove 1,000 freeze pipes. ...................... 9

       B.    Draper assumed <u>no cost</u> to remove freeze pipes. ............................. 11

       C.    Draper assumed that Zachry could <u>install sheet pile</u> on October 7, 2005, but Zachry was not ready to begin sheet pile installation until November 15—<u>40 days later than Draper assumed</u>. ....................................................................................... 11

D. Draper's assumptions—contrary to undisputed facts—make his testimony no evidence.......................................................................... 12

III. <u>"But-for" Causation</u> Fails as a Matter of Law for Lack of Expert Testimony................................................................................................. 12

IV. As a Matter of Law, Zachry Failed to Satisfy <u>§5.42's Condition Precedent</u> of Giving PHA's Chief Engineer Written Notice of Zachry's Contention That the R&R Response Was Contrary to the Contract. ............................................................................................... 15

 A. As Zachry does not deny, §5.42 is a condition precedent.................. 15

 B. Unambiguously, §5.42 applies to Zachry's contention that the R&R response breached the Contract. ............................................... 16

 C. Zachry is erroneously trying to invalidate §5.42 notice by relying on §5.41's change order requirement and Shintech............... 17

 D. Zachry erroneously says it proved substantial compliance with §5.42's notice requirement............................................................... 21

 E. The parties tried the issue whether Zachry gave §5.42 notice. .......... 22

V. PHA is Entitled to Segregated <u>Attorneys' Fees</u> the Jury Found for Zachry's R&R Claim. ........................................................................... 23

VI. Invalid <u>"Pass-Through" Claim</u>: Zachry Recovered $8.578 Million in Costs Incurred Not by Zachry, but by Another Entity (Question 5). ........... 24

 A. A pass-through claim requires that the owner's breach caused the general contractor to breach. ..................................................... 25

 B. Zachry misreads *Interstate* concerning when the burden of proof shifts. .................................................................................... 27

 C. Zachry misreads the Master Services Agreement ("MSA"). ............. 27

VII. Erroneous Exclusion of PHA's $8+ Million in Harms/Losses. ................... 28

 A. PHA's interrogatory response <u>was timely</u>. ....................................... 28

 B. Zachry's interrogatory and PHA's response were <u>not limited to</u> disclosing PHA's harms/losses for <u>proportionality of LDs</u>. .............. 29

iii

C.     Excluding PHA's $8+ million in harms/losses was harmful. ............ 29

VIII.  Zachry Opened the Door to PHA's Harms/Losses. ..................................... 30

     A.     Zachry misunderstands *Horizon/CMS Healthcare v. Auld*, 34 S.W.3d 887, 905-07 (Tex.2000) and misrelies on *Hayden v. State*, 296 S.W.3d 549, 554 (Tex.Crim.App. 2009). ......................... 31

     B.     The court's erroneous exclusion of the open-the-door evidence was harmful. ................................................................................... 32

IX.    Charge Error Skewed the Trial on the NDFD Exception for Fraud. ............ 32

X.     The Erroneous Apparent Authority Instruction Skewed the Trial. .............. 33

     A.     The Contract Negated Apparent Authority. ....................................... 33

     B.     Additionally, Zachry did not plead apparent authority. ...................... 34

CERTIFICATE OF COMPLIANCE. ........................................................................ 37

CERTIFICATE OF SERVICE ................................................................................ 38

iv

# TABLE OF AUTHORITIES

## CASES

*4901 Main v. TAS Auto.*,
   187 S.W.3d 627 (Tex.App.-Hous.[14th Dist.] 2006, no pet.) ............................ 24

*Abraham v. Union Pac. R.R.*,
   233 S.W.3d 13 (Tex.App.-Hous.[14th Dist.] 2007, pet. denied) ........................ 12

*American Airlines Employees Federal Credit Union v. Martin*,
   29 S.W.3d 86 (Tex.2000) .................................................................................. 17

*Arbor Windsor Court v. Weekley Homes*,
   2015 WL 1245548 (Tex.App.-Hous.[14th Dist.] 2015, no pet. h.) ..................... 16

*Argee v. Solis*,
   932 S.W.2d 39 (Tex.App.-Beaumont 1995) ....................................................... 19

*Board of Regents v. S.&G Constr.*,
   529 S.W.2d 90 (Tex.Civ.App.-Austin 1975, writ ref'd n.r.e.) ........................... 18

*Burroughs Wellcome v. Crye*,
   907 S.W.2d 497 (Tex.1995) ............................................................................... 12

*Cajun Constructors v. Velasco Drainage Dist.*,
   380 S.W.3d 819 (Tex.App.-Hous.[14th Dist.] 2012, pet. denied) ..................... 16

*Chevron Phillips Chem. v. Kingwood Crossroads*,
   346 S.W.3d 37 (Tex.App.-Hous.[14th Dist.] 2011, pet. denied) ........................ 24

*Coastal Ref. & Mktg. v. U.S. Fid. & Guar.*,
   218 S.W.3d 279 (Tex.App.-Hous.[14th Dist.] 2007, pet. denied) ..................... 23

*Cont'l Oil v. Baxter*,
   59 S.W.2d 463 (Tex.Civ.App.-Eastland 1933, no writ) ..................................... 35

*Crown Life Ins. v. Casteel*,
   22 S.W.3d 378 (Tex.2000) ............................................................................ 32, 33

*Douglass v. Panama, Inc.*,
   504 S.W.2d 776 (Tex.1974) ............................................................................... 33

*Equitable Life v. Ellis*,
147 S.W. 1152 (Tex.1912)................................................................................ 33

*Green v. Solis*,
951 S.W.2d 384 (Tex.1997)............................................................................. 19

*Hanks v. GAB Bus. Servs.*,
644 S.W.2d 707 (Tex.1982)......................................................................... 19, 20

*Hayden v. State*,
296 S.W.3d 549 (Tex.Crim.App. 2009)............................................................. 31

*Horizon/CMS Healthcare v. Auld*,
34 S.W.3d 887, (Tex.2000)............................................................................. 31

*Houston Exploration v. Wellington*,
352 S.W.3d 462 (Tex.2011)................................................................................ 4

*Humble Nat. Bank v. DCV, Inc.*,
933 S.W.2d 224 (Tex.App.-Hous. [14th Dist.] 1996, writ denied)..................... 33

*Interstate Contracting v. City of Dallas*,
135 S.W.3d 605 (Tex.2004)................................................................... 25, 26, 27

*North Harris County Junior College Dist. v. Fleetwood Construction*,
604 S.W.2d 247 (Tex.Civ.App.-Hous.[14th Dist.] 1980, writ ref'd n.r.e.)......... 18

*Paramount National Life v. Williams*,
772 S.W.2d 255 (Tex. App.—Hous.[14th Dist.] 1989, writ denied) .................. 34

*Shintech, Inc. v. Group Constructors*,
688 S.W.2d 144 (Tex.App.-Hous[14th Dist.] 1985, no writ) ................. 18, 19, 20

*Tennessee Gas Pipeline v. Technip USA*,
2008 WL 3876141 (Tex.App.-Hous.[1st Dist.] 2008, pet. denied)..................... 20

*Texas Dep't of Transp. v. Jones Bros.*,
92 S.W.3d 477 (Tex.2002).............................................................................. 17

*West v. Triple B. Services*,
264 S.W.3d 440 (Tex.App.-Hous.[14th Dist.]  2008, no writ............................ 18

*Wolf Hollow I v. El Paso Mktg.*,
   409 S.W.3d 879 (Tex.App.-Hous.[14th Dist.] 2013), *rev'd on other grounds*, 450 S.W.3d 121 (Tex.2014)..................................................................... 4

## STATUTES

Civil Practice & Remedies Code §16.071 ............................................................... 17

Civil Practice & Remedies Code §16.071(a).......................................................... 16

## RULES

Fed. R. Evid. 403 ....................................................................................................... 31

# RECORD REFERENCES

**Clerk's Record:**

 Clerk's Record (Volumes 1-64)    CR[volume]:[page]

 Supp. Clerk's Record (Volumes 1-6)  SCR[volume]:[page]

**Reporter's Record:**

 Trial and post-trial hearings (Volumes 1-77) [volume]:[page]
  *E.g.*, Volume 16 at page 20 will be cited as "16:20"

 Pre-trial hearings      [(hearing date)]:[page]
  *E.g.*, the 9/18/09 hearing at page 20 will be cited as "(9/18/09):20"

 Status Conference on 9/11/09  [volume][(hearing date)]:[page]
  (only pre-trial hearing with more than one volume)

 Plaintiff's Exhibits (Volumes 78-99) PX[number]

 Defendant's Exhibits (Volumes 100-116) DX[number]

 Court Only Exhibits (Volume 117)  DX(Court Only):[number]

**The Contract:**

 Contract         §[General Condition number]
  The Contract will be cited by General Condition number, not by exhibit number. The General Conditions are in the Appendix.

**Appendices:**

 PHA's Appendix (Tabs 1-18)   A[Tab]
  The Appendix Index contains the record location for each document.

 Zachry's Appendix (Tabs 1-43)  ZA[Tab]

**Briefs:**

 Brief of Appellant     Br.App't

 Brief of Appellee      Br.App'e

 PHA's Post-Remand Supplemental Brief
 of Appellant       P.S.Br.

 Zachry's Supplemental Brief of Appellee Z.S.Br.

**Oral Argument Transcript:**

  The transcript of the oral argument before

  the Court of Appeals in this case is attached

  to PHA's Post-Remand Supplemental

  Brief of Appellant and cited in the format:  OA:[page]:[line]

**\* Emphasis Is Added Throughout Brief Unless Otherwise Noted.**

# INTRODUCTION

Zachry ("Z.S.Br.") discusses only Zachry's R&R claim.[1] Four separate/independent grounds—not addressed by the Supreme Court—require render against Zachry on its R&R claim.

First, the Contract's face negates the jury's **liability** findings that the R&R response breached Contract §5.10 and Change Order 4 ("CO4").

Second, Draper, Zachry's sole **damages** expert, was unreliable—and his testimony no evidence—because Draper assumed facts contrary to undisputed facts.

Third, Zachry has no expert testimony on "but-for" **causation**—*i.e.*, no expert testified that, absent use of Zachry's frozen-COW design or Mageau's alternative frozen-COW design, there was no way for Zachry to divide the project so as to allow Zachry to continue working "in the dry."

Fourth, Zachry failed to comply with §5.42's **conditions precedent** that Zachry give written notice, within five days, to PHA's Chief Engineer of Zachry's contention that the R&R response, issued by CH2M's Thiess, contravenes the Contract.

Zachry's R&R claim should be rendered on **no liability**, **no damages**, **no causation**, and **no compliance with conditions precedent**. And Zachry's R&R

---

[1] Zachry does not mention its claim (which Zachry lost to the jury) for $600,000 payment for dredging; nor does Zachry mention its claim for withheld LDs. P.S.Br.69-70; *infra* p.29-30.

1

claim is, in any event, subject to a partial render because $8.578 million of the R&R damages represent costs sustained not by Zachry but by a different entity. The Supreme Court did not address *any* of these render arguments or PHA's multiple grounds for new trial. The R&R claim should be rendered against Zachry, and PHA should be awarded the segregated attorneys' fees for the R&R claim found by the jury.

Zachry relies on the Supreme Court's recitation of facts, but that Court was not interpreting the Contract's face or addressing PHA's legal arguments on remand. The Supreme Court remanded to this Court for that purpose.

## ARGUMENT

**I.    Liability Findings Fail as a Matter of Law.**

   **A.    PHA did not breach §5.10.**

      **1.    Contract's plain language authorized the R&R response.**

- Contract Tech.Spec.02161 required Zachry to provide a Submittal, including Zachry's "means [and] methods," for the frozen COW because the frozen COW modified the main freeze wall, a shoring wall;

- Contract §5.22 authorized PHA to require Zachry to revise and resubmit Zachry's frozen-COW design/Submittal based on PHA's concern that Zachry's means/methods would not comply with the Contract;

2

- Contract Tech.Spec.01500 required Zachry to "protect the Work," including the Wharf; and,

- §5.22 authorized the R&R response based on PHA's concern that Zachry's frozen-COW design could endanger the Wharf's structural integrity.

PHA's Post-Remand Supplemental Brief of Appellant ("P.S.Br.") p.22-28.

Zachry argues that, in response to a Submittal required by Tech.Spec.02161, PHA may require Zachry to revise and resubmit based only on whether the Submittal complies with OSHA. Z.S.Br.28-29. But Zachry's Contract interpretation is unreasonable/absurd because it would require PHA to stand silent when a Submittal, if implemented, could cause the Wharf to collapse. Zachry's expert Lacy agreed that PHA's concern underlying the R&R response was reasonable. 42:125; 43:18, 159-60.

### 2. No Contract provision Zachry cites supports Zachry's argument that the R&R response breached §5.10.

#### a. §5.10's plain language defeats Zachry's argument.

Zachry quotes §5.10 as stating that Zachry shall "prosecute the Work…in such manner, using such methods as [Zachry] shall choose." Z.S.Br.4. But Zachry's quotation leaves out §5.10's proviso—appearing immediately after the language Zachry quotes—stating:

3

"provided, however, that the Work shall be completed…in accordance with the Contract Documents [the Contract]."

A15:§5.10. A "proviso must be construed as a limitation or restraint upon the authority defined in the clause immediately preceding it." *Wolf Hollow I v. El Paso Mktg.*, 409 S.W.3d 879, 888 (Tex.App.-Hous.[14th Dist.] 2013), *rev'd on other grounds*, 450 S.W.3d 121 (Tex.2014). Zachry's right to choose its mean/methods is limited/restrained by §5.10's proviso that Zachry must comply with the Contract, including §5.22 authorizing the R&R response.

Zachry says §5.10 is "specific" and controls over §5.22, which Zachry claims is "general." Z.S.Br.27-28. Actually, §5.10 states that Zachry's *general* right to choose means/methods is subject to §5.10's *specific* proviso that Zachry must comply with the Contract.

### b. §5.22's plain language defeats Zachry's argument.

Zachry says §5.22 "did not authorize PHA to control Zachry's means and methods." Z.S.Br.29. But, as Justice Christopher's pointed out, §5.22 authorized the R&R response. OA:26:8-10. Because §5.22 is unambiguous, Zachry is wrong to rely on parol evidence of Zachry's witnesses' belief that §5.22 would preclude PHA from reviewing Zachry's means/methods. Z.S.Br.30-31; *Houston Exploration v. Wellington*, 352 S.W.3d 462, 469 n.25 (Tex.2011).

4

Zachry says §5.22 does not apply to means/methods because §5.22 calls for submittals to include "all…details of **Work** to be incorporated into the Project," and, according to Zachry, the Contract's definition of "Work" *excludes* "Zachry's chosen means and methods." Z.S.Br.30, 46. But the "Work" includes means/methods because §1.42 defines "Work" to include "all labor, Materials, Equipment and services…provided by [Zachry] to fulfill [Zachry's] obligations pursuant to the Contract." A15:§1.42. And §1.30 defines "Project" to include the Work. A15:§1.30.

The question is whether §5.22 authorized the R&R response, not whether PHA was negligent/arbitrary as to issuance of the R&R response or not taking it back (Z.S.Br.11). The Supreme Court cited facts relevant to the arbitrary/capricious exception to the no-damages-for-delay ("NDFD") provision, but that Court did not address breach.

### c. Tech.Spec.02161's plain language defeats Zachry's argument.

Zachry argues that Tech.Spec.02161 "did not authorize PHA" to comment on Zachry's means/methods. Z.S.Br.28. But, as Zachry admits, Tech.Spec.02161 requires Zachry to *submit* its means/methods to PHA. *Id.* And §5.22 authorizes an R&R response to that Submittal. Zachry says that Tech.Spec.02161 is "[s]ubject to the General and Special Conditions" (*id.*), but the General and Special Conditions *include* §5.22 (A15§5.22).

Zachry says that PHA's review of a Tech.Spec.02161 submittal was only "to ensure the shoring plan satisfied OSHA safety rules." Z.S.Br.29. But, as explained above, Zachry's interpretation would absurdly mean that PHA could not respond to such a submittal based on PHA's concern that Zachry's frozen-COW design threatened the Wharf's structural integrity. Zachry cites parol evidence of what witnesses thought §5.22 authorized. Z.S.Br.29. But parol evidence is not relevant because §5.22 and Tech.Spec.02161 <u>un</u>ambiguously authorize the R&R response.

### d. §4.07's plain language defeats Zachry's argument.

Zachry argues that §4.07 "forbids PHA control over Zachry's health-and-safety plans," so Zachry says §4.07 precluded the R&R response. Z.S.Br.28. But, while §4.07 says Zachry is responsible for health/safety of people on site, nothing in §4.07 precluded the R&R response (authorized by §5.22) to the frozen-COW Submittal (required by Tech Spec.02161) based on PHA's concern for the Wharf's structural integrity. A15§4.07.

### B. The finding that PHA breached CO4 also fails as a matter of law.

Nothing on the face of CO4, a three-page document (A21)—or the one-page April 13, 2005 price proposal (A20)—supports Anderson's interpretation of CO4. Anderson—the *only witness to testify about what Zachry intended* CO4 to mean—testified:

- use of the frozen COW was <u>not</u> a *term* of CO4, such that CO4 did not obligate Zachry to use the frozen COW;

- under CO4, Zachry continued to have the ***right***, ***option***, or ***election*** under §5.10 to choose whether to use, or not use, the frozen COW as means/methods; and

- if Zachry elected to use the frozen COW, then, according to Anderson, CO4 provided that *PHA would no longer have §5.22 rights to require Zachry to revise and resubmit Zachry's frozen-COW design.*

15:61-62. But Zachry never explains what language in CO4 (or the April 13 price proposal) supports Anderson's notion that, in CO4, PHA gave up its §5.22 rights to require Zachry to revise and resubmit if Zachry elected to use the frozen COW as means/methods. The reference in the April 13 price proposal to a frozen COW cannot reasonably be read to carry Anderson's interpretation. Neither CO4 nor the April 13 price proposal mentions §5.22, and CO4 states that all provisions of the Contract not modified herein (such as §5.22) remain in effect. A20, A21.

Even if, due to the April 13 price proposal, CO4 was based on Zachry's use of a frozen COW, that would be no different from Zachry's original proposal to enter into the Contract being based on Zachry's use of the main freeze wall. And,

7

PHA exercised its §5.22 right to require Zachry to revise and resubmit its design for the main freeze wall to which Zachry complied. PX313, 922-23.

Zachry appears now to be reverting back to its *pre-trial* interpretation in which Zachry claimed (1) use of the frozen COW was <u>un</u>ambiguously a term of CO4, such that (2) as a matter of law, Zachry was ***obligated*** to use the frozen COW and PHA was ***obligated*** to let Zachry use the frozen COW. Z.S.Br.33-35; P.S.Br.6. Zachry cannot now prevail on its *pre-trial* as-a-matter-of-law interpretation because (1) as the trial court held, CO4 does not <u>un</u>ambiguously make use of the frozen COW a term binding on both parties (A6:13296)[2], and (2) Anderson testified that use of the frozen COW was <u>not</u> a term of CO4, and Anderson said that, under CO4, Zachry was <u>not</u> obligated to use the frozen COW (15:61-62).

### C. Zachry has no answer to the charge error.

Over PHA's objections, the court erroneously instructed the jury: "[i]n answering [Question 1] you are not being asked to decide whether [PHA] failed to comply with §5.10." A27:24; A2:17390. CO4 incorporates the rest of the Contract (including §5.10), so the jury could not decide whether PHA breached CO4 without considering §5.10—especially given Anderson's interpretation of

---

[2] CO4 says Zachry will "perform [] in accordance with [Zachry's price] proposal dated July 11, 2005." A21 at DX0052.004. The July 11 price proposal does not mention a frozen COW.

CO4 that turns on §5.10. Zachry says this charge error is harmless because the jury found that PHA failed to comply with §5.10. Z.S.Br.35. But the jury's note shows the instruction confused the jury. CR59:17445.

## II.    The <u>Damages</u> Finding Fails as a Matter of Law.

Expert Draper provided the only evidence on damages, calculating costs for his hypothetical "in the dry" schedule for completing the project and then subtracting those costs from Zachry's actual costs to complete the project "in the wet." But Draper's hypothetical schedule and costs are unreliable and no evidence. P.S.Br.28-32.

### A.    Draper assumed <u>no time</u> to remove 1,000 freeze pipes.

Draper admitted he scheduled no time for removing 1,000 freeze pipes buried, sometimes at angles, 100 feet into the earthen berm. 53:30-32.

| | |
|---|---|
| Question: | In your schedule, you don't include any time for removing the pipe, correct? |
| Draper: | We have some float time in that schedule, so it would allow for that, yes. <u>We didn't explicitly schedule the pipe removal</u>. |
| Question: | <u>It doesn't appear anywhere in your schedule</u>? |
| Draper: | No…**There wasn't time to account for that**. |
| Question: | Thank you. And I know you have explanation and float and all that. And **you don't include any costs** for removing that pipe either, do you? |
| Draper: | **No**. |

53:30.

9

Zachry says Draper's schedule had "float" time to cover removing freeze pipes. Z.S.Br.38. But freeze-wall expert Mageau said it would take *two to four weeks* to remove the freeze pipes. DX276.015.[3] Draper never testified that (1) he had *two to four weeks* of float for freeze-pipe removal, or (2) how much float was in his schedule. Draper acknowledged that his schedule was extremely tight. 53:33. Draper's reliance on float does not make his methodology reliable.

Left with no answer to Draper's unreliable hypothetical schedule, Zachry makes up evidence when Zachry says:

> "[T]he day after pipe-removal started, Zachry would begin the more time-consuming critical-path activity of berm removal where the pipes had been removed. After the first day, pipe and berm removal would proceed simultaneously."

Z.S.Br.38 (citing 53:29-30). Thus, Zachry tells this Court that Draper testified that, on day one, Zachry would remove pipe at a *first* location on the berm, and then on day two, Zachry would remove pipe at a *second* location on the berm while (on day two) Zachry concurrently dredged the berm at the *first* location—with the process proceeding seriatim for day three and forward. But Draper did not say anything like this, either on pages Zachry cites (53:29-30) or anywhere else. Draper did say that if Zachry had to remove the freeze pipes, then Zachry would

---

[3] Mageau's schedule cannot make Draper's schedule reliable (Z.S.Br.18) because, according to Mageau, Mageau's schedule did not account for several known problems Zachry was facing. (30:106-08, 116-17).

"lose a day." *Id.* But Draper did not testify to the "day one, day two" seriatim procedure for pipe removal that Zachry's brief describes.

## B. Draper assumed <u>no cost</u> to remove freeze pipes.

Draper conceded he did not "include any costs for removing [the freeze] pipe." 53:30, 32. Even under Zachry's conjured-up "evidence" of the "day one, day two" seriatim procedure for pipe removal, Zachry would need to <u>pay for workers and equipment</u> to remove 1,000 deeply-buried freeze pipes.

## C. Draper assumed that Zachry could <u>install sheet pile</u> on October 7, 2005, but Zachry was not ready to begin sheet pile installation until November 15—<u>40 days later than Draper assumed</u>.

Zachry claims Anderson's sheet pile testimony had to do with Mageau's alternative frozen COW (Z.S.Br.39), but regardless of which COW design was used, Zachry would still need to install sheet pile (P.S.Br.31). Zachry disputes PHA's claim that, as of November 15, 2005, Zachry still was not ready to install sheet pile. Z.S.Br.39. But Anderson, referring to "the status…on November 15," testified about "[e]verything else [that] has to be done for the cutoff wall," including "the sheet pile" that Zachry's people still "weren't ready for." 14:101-02. Zachry quotes Anderson's testimony that sheet-pile installation would take "a couple of days at best," but Anderson was referring to "a couple of days" *after November 15*. 14:102-03.

11

Zachry says Draper had float to allow "sheet-pile installation to be delayed until November 15 or later." Z.S.Br.39-40. But Zachry's cites do not support that. Draper never said his schedule had *40 days* of float.[4]

### D. Draper's assumptions—contrary to undisputed facts—make his testimony no evidence.

The nature of construction scheduling makes it impossible to know how Draper's erroneous assumptions affected his "what-if" schedule and costs. Where, as here, an expert's assumptions are contrary to the undisputed facts, his opinion is <u>unreliable and no evidence</u>. *Burroughs Wellcome v. Crye*, 907 S.W.2d 497, 499 (Tex.1995); *Abraham v. Union Pac. R.R.*, 233 S.W.3d 13, 16–17 (Tex.App.-Hous.[14th Dist.] 2007, pet. denied).

## III. <u>"But-for" Causation</u> Fails as a Matter of Law for Lack of Expert Testimony.

To prove "but-for" causation, Zachry needed expert testimony that, given the R&R response, there was no way for Zachry to continue working "in the dry"—*i.e.*, there was *no other cutoff wall* that could have been used to divide the project and thus allow Zachry to continue working "in the dry." Zachry's evidence shows (1) the R&R response precluded Zachry from using Zachry's frozen-COW

---

[4] On July 11, 2015, Zachry filed with this Court a pleading styled *NOTICE OF INCORRECT CITATION*, in which Zachry notes that its Supplemental Brief of Appellee erroneously cited to PX580, which was not admitted in evidence and is not in the record. 1:422; 3:420. Instead, Zachry now cites CR37:10572 and CR44:12675, but neither shows Draper having 40 days of float for sheet-pile installation.

design, and (2) Mageau's alternative design would not work. However, there is no expert testimony that, excluding Zachry's frozen-COW design and Mageau's alternative, *no other cutoff wall could have been used*. Zachry argues that the R&R response "demanded a non-frozen alternative" COW (Z.S.Br.16), but Zachry adduced no expert evidence that a non-frozen alternative could not have been used.

Recognizing that it needed expert testimony (*i.e.*, that no alternative cutoff wall could have been used), Zachry misstates the testimony of its engineering expert Lacy. Apparently Zachry hopes this Court will not read the 45 pages of Lacy's testimony that Zachry cites. Z.S.Br.40-41 (citing 42:59-104). Zachry says "Lacy testified that Zachry had no viable alternative-cutoff wall to bifurcate the project…and thus had to switch in the wet" (*id.)*, but Lacy gave no such testimony. Rather in the 45 pages Zachry cites, (1) Lacy testified that Mageau's alternative frozen-COW design would not work, but (2) Lacy never testified, in those 45 pages or elsewhere in the record, that there was *no other alternative cutoff wall that could have been used* to divide the project so as to allow Zachry to continue working "in the dry."

Even if non-engineer Anderson said no other cutoff wall could have been used, Anderson is not an expert and his testimony (were it that of an expert) is conclusory and unreliable. When Anderson attempted to testify about "alternative" cutoff wall designs, PHA objected that Anderson "does not have any qualifications

13

to give…expert engineering testimony." 19:47. Zachry responded that Anderson was *not* giving expert testimony but, rather, was just "talking about what his thoughts were at the time" of the R&R response. 19:48.

Zachry's damages expert Draper disclaimed any intent to testify on causation. P.S.Br.33. Draper never opined that no other cutoff wall (other than Zachry's frozen-COW design or Mageau's alternative) could have been used to divide the project so as to allow Zachry to continue working "in the dry."

Zachry says it had no time in the schedule to identify/build an alternative COW (Z.S.Br.20), but no expert so testified; instead Zachry cites PHA witnesses who said no such thing (Thiess, 40:4548; Vincent, 46:78-79, 90-92; McQueen, 28:22) and Anderson (19:38-50).[5] Zachry had time to have Mageau prepare his alternative frozen-COW design which Zachry says would not have worked, so Zachry had time to identify/build an alternative COW that would have worked. Also, Zachry could have asked for more time under §5.08. P.S.Br.49 (trial error in excluding evidence that, faced with R&R response, Zachry never asked for more time).

Zachry says it did not need an expert on causation. Z.S.Br.40. But whether some other cutoff wall—other than Zachry's frozen-COW design or Mageau's

---

[5] Zachry cites PHA's Vincent's testimony (46:83) that Vincent was unaware of whether a sketch for an alternative wall existed. Z.S.Br.17. Neither Thiess, Vincent nor McQueen testified that no other cutoff wall could have been used.

alternative—could have been used is not a matter about which the lay jury would have understanding.

Causation experts have to rule out alternative causes—such as the possibility that Zachry switched to working "in the wet" because Zachry believed, at the time, that it could finish the project faster/cheaper "in the wet."[6] Such an alternative cause may explain why Zachry failed to give PHA's chief engineer the required §5.42 written notice of Zachry's contention that the R&R response breached the Contract.

## IV. As a Matter of Law, Zachry Failed to Satisfy <u>§5.42's Condition Precedent</u> of Giving PHA's Chief Engineer Written Notice of Zachry's Contention That the R&R Response Was Contrary to the Contract.

### A. As Zachry does not deny, §5.42 is a condition precedent.

Contract §5.42 requires Zachry to give immediate (or at least five days') written notice to PHA's Chief Engineer "[i]f [Zachry] believes that any interpretation of the Contract…by the Inspectors…or other agents of [PHA] constitutes a change to the Contract." A15:§5.42. And §5.42 states (in language Zachry nowhere quotes in its brief): **"Any notice not timely made by [Zachry] shall be deemed a waiver by [Zachry] of its right to assert a claim in respect of [the] interpretation."** *Id.* The R&R response was issued by CH2M's Thiess who,

---

[6] PHA's expert Hoshino said Zachry's real-time schedules—which did not show Zachry meeting Contract deadlines—did not tell the true story, and Zachry was further behind than it admitted. 62:49-50.

15

according to Special Condition 12(b), is PHA's Inspector. A16. Section 5.42 creates a condition precedent. *Cajun Constructors v. Velasco Drainage Dist.*, 380 S.W.3d 819, 822 (Tex.App.-Hous.[14th Dist.] 2012, pet. denied); *Arbor Windsor Court v. Weekley Homes*, 2015 WL 1245548, at *1 (Tex.App.-Hous.[14th Dist.] 2015, no pet. h.).

## B. Unambiguously, §5.42 applies to Zachry's contention that the R&R response breached the Contract.

Zachry argues that §5.42 notice—that PHA Inspector's interpretation would "change" (deviate from) the Contract—does not apply if PHA Inspector's interpretation would "breach" the Contract. Z.S.Br.46. But a disputed interpretation that would "change" (deviate from) the Contract subsumes an interpretation that would "breach" (deviate from) the Contract. Zachry says §5.42 is ambiguous as to whether a "change" to the Contract subsumes a "breach" of the Contract (Z.S.Br.48, 54), but §5.42 <u>un</u>ambiguously applies to Zachry's contention that the R&R response was a breach.

Zachry prevailed on the trial court to invalidate §5.42 notice—as a condition precedent to Zachry's claim for breach—based on CPRC §16.071(a), which states:

> "A contract stipulation that requires a claimant to give notice of a <u>claim for damages</u> as a condition precedent to the <u>right to sue on the contract</u> is not valid unless the stipulation is reasonable. A stipulation that requires notification within less than 90 days is void."

16

Under *American Airlines Employees v. Martin*, 29 S.W.3d 86 (Tex.2000), a condition precedent requiring notice of a damages claim is not invalidated by §16.071 if that notice has an *additional* purpose—*i.e.*, a purpose other than giving notice of a damages claim.  CPRC §16.071 does not invalidate §5.42 because, while §5.42 *does* create a condition precedent requiring notice of Zachry's contention of breach, §5.42 notice has another purpose as well—giving PHA's Chief Engineer the opportunity to resolve the dispute before damages accrue.[7]

Zachry argues that if §5.42 applies, Zachry could never recover breach-of-contract damages because §5.42 says the Chief Engineer's determination, following his investigation, is "final and conclusive."  Z.S.Br.48.  But such determinations by the Chief Engineer are subject to judicial review.  *Texas Dep't of Transp. v. Jones Bros.*, 92 S.W.3d 477, 481-82 (Tex.2002).

### C. Zachry is erroneously trying to invalidate §5.42 notice by relying on §5.41's change order requirement and *Shintech*.

Because §5.42 so obviously applies to Zachry's claim of breach, Zachry wants to argue about *another* provision, §5.41, which requires Zachry to obtain a change order before recovering for changes in the work.  Quoting §5.41's language concerning changes "**within the general scope of the Work**," Zachry erroneously

---

[7] Zachry says the "radical-change" doctrine invalidates §5.42 because a "radical change" can be a breach. Z.S.Br.51-52.  But the issue is whether the radical-change doctrine invalidates §5.42's notice requirement, not whether a radical change is a breach.  Extending the radical change rule to invalidate a contractually-required notice like §5.42 would lead to absurd results.  P.S.Br.47.

attempts to limit §5.42's notice requirement. Z.S.Br.45. But the language of §5.42 talks about "a change to the Contract"—not a change "within the general scope of the Work." A15:§5.42. Zachry is trying to re-write §5.42.

Zachry says §5.42 does "not apply to claims [that] the owner breached," citing *Shintech v. Group Constructors*, 688 S.W.2d 144 (Tex.App.-Hous[14th Dist.] 1985, no writ), and *Board of Regents v. S.&G Constr.*, 529 S.W.2d 90 (Tex.Civ.App.-Austin 1975, writ ref'd n.r.e.). Z.S.Br.46. But in *Shintech* the court did not hold that a <u>notice provision</u> is inapplicable to a claim that the owner breached; rather, the court held in *Shintech* that the owner had "breached the contract in ways <u>unrelated to the notice requirements</u> in the contract." *Shintech* at 151. *Board of Regents* did not involve a notice provision. *North Harris County Junior College Dist. v. Fleetwood Construction*, 604 S.W.2d 247, 253-54 (Tex.Civ.App.-Hous.[14th Dist.] 1980, writ ref'd n.r.e.) (upholding finding "that Fleetwood gave adequate notice" required by contract).

In all these cases—*Shintech, Board of Regents,* and *Fleetwood*—the Court of Appeals invalidated a provision, like §5.41 in PHA's contract, requiring that the contractor obtain a change order before contractor can recover damages for owner's breach. *West v. Triple B. Services*, 264 S.W.3d 440, 449-50 (Tex.App.-Hous.[14th Dist.] 2008, no writ) (at headnote 14, citing *Shintech* and rejecting

18

owner's argument that contractor failed to comply with contractual provision requiring contractor to obtain extension of time).  Z.S.Br.49.

However, the Supreme Court clarified *Shintech* when the Supreme Court reviewed the court of appeals' application of *Shintech* in *Green v. Solis*, 951 S.W.2d 384, 389 (Tex.1997), reviewing *Argee v. Solis*, 932 S.W.2d 39, 46-47 (Tex.App.-Beaumont 1995).  The Court of Appeals in *Argee v. Solis* held that, under *Shintech*, the general contractor's breach invalidated the contractual requirement that the subcontractor provide a release of lien.  In reviewing that Court of Appeals holding, the Supreme Court in *Green* held that the Court of Appeals' *Shintech* reasoning is correct only if, <u>under the law of excuse</u>, the general contractor's breach *excused* the subcontractor from complying with the contractual obligation to provide the release of lien.  The Supreme Court cited *Hanks v. GAB Bus. Servs.*, 644 S.W.2d 707, 708 (Tex.1982) on the law of excuse.  *Green*, 951 S.W.2d. at 389.

Under the law of "excuse," a party is excused only if the breaching party breached a contractual covenant that is mutually dependent with the contractual covenant that the non-breaching party seeks to be excused from performing. *Hanks*, *supra.* And excuse law provides that a party is not excused from complying with its contractual obligations unless, in the face of the other party's breach, the party seeking to be excused did not demand that the breaching party continue to

19

perform the contract. *Id.* Thus, when the owner breaches, the contractor is <u>not</u> excused from complying with the contractor's obligations where, as here, the contractor (Zachry) continues to demand that the owner (PHA) perform the owner's contractual obligations. *Green* (citing *Hanks*); P.S.Br.48-49; Z.S.Br.49-50.

Zachry claims that *Green* distinguishes between excusing compliance with *procedural* obligations as opposed to *substantive* obligations. Z.S.Br.49. But *Green* makes no such distinction when the Supreme Court states that a *Shintech* analysis must comply with the law of excuse.

Importantly, *Shintech* does not invalidate a contractual requirement that the contractor give <u>notice</u> that the owner has breached—as opposed to a contractual requirement that contractor obtain a change order from owner. No public policy could support using *Shintech* to invalidate a contractual requirement that contractor give notice that owner has breached because invalidating such a notice requirement would deprive the owner of the opportunity to resolve the dispute before damages accrue. Good public policy underlies *Tennessee Gas Pipeline v. Technip USA*, 2008 WL 3876141, at *23 n.11 (Tex.App.-Hous.[1st Dist.] 2008, pet. denied), in which the court refused to apply *Shintech* to invalidate a contractual provision requiring notice that the other party has breached. Z.S.Br.50.

**D.** **Zachry erroneously says it proved substantial compliance with §5.42's notice requirement.**

As Justice Christopher recognized, it is undisputed that Zachry did not give §5.42 notice to PHA's Chief Engineer. OA:17:5-6. Anderson testified Zachry did not give the notice (16:47), and Zachry does not even claim to this Court that it *did give* PHA's Chief Engineer the required §5.42 notice.

Rather, Zachry tells this Court that it proved substantial compliance with §5.42 based on oral notice to a lower-level PHA engineer and Thiess.[8] Z.S.Br.53. But such notice is not substantial compliance as a matter of law; it does not satisfy essential elements of §5.42 notice—<u>form</u> of notice (written) and <u>recipient</u> (PHA's Chief Engineer) designed to bring the dispute to the attention of PHA's top decision-maker. P.S.Br.44-45. *The evidence does not even raise a fact issue on substantial compliance.* The Supreme Court said "Zachry protested" the R&R response, but that Court was not addressing §5.42 notice. Z.S.Br.16.

---

[8] Thiess had no authority to receive §5.42 notice. *Infra*, p.33-35. Under Contract §1.07, PHA's Chief Engineer is the only PHA employee authorized to "resolve disputes." A15:§1.07. Zachry would have this Court rule that the very PHA employees whose conduct gave rise to the dispute, but who have no authority to resolve the dispute, are permissible recipients of notice of the dispute. *Id.*; Z.S.Br.53. Zachry's argument is inconsistent with policies underlying governmental immunity and statutory limitations on government procurement. P.S.Br.37-39, 58-60.

21

## E. The parties tried the issue whether Zachry gave §5.42 notice.

Whether Zachry gave §5.42 notice was tried because the court <u>charged the jury</u> *four times* during trial, including once in the charge, that the jury could/may consider §5.42 for determining a party's state of mind. CR59:17392; 16:56; 49:112: 68:99. Zachry's state of mind was important on causation, *i.e.*, whether the real reason for Zachry's switch to working "in the wet" was not the R&R response but rather Zachry's then-belief that it could finish faster/cheaper working "in the wet." Had Zachry really switched to working "in the wet" because of the R&R response, Zachry would have given §5.42 notice of its contention that the R&R response breached the Contract.

And §5.42 notice was also important to PHA's state of mind for the arbitrary/capricious and bad-faith "exceptions" to the NDFD provision—*e.g.*, whether PHA was arbitrary/capricious in failing to withdraw the R&R response as CH2M's investigation into the concern underlying the R&R response continued. A2:17392. Zachry's failure to give §5.42 notice misled PHA into believing that Zachry did not consider the R&R response to be that significant—certainly not so significant as to cause Zachry to switch to working "in the wet."

Zachry says a new trial is required so a jury can once again "determine whether Zachry <u>substantially</u> complied with §5.42." Z.S.Br. 54. But the jury in

the trial court *was already charged* (four times) on §5.42 and, as explained above, the evidence does not even raise a fact issue on substantial compliance.

Relying on insurance law, Zachry argues that a new trial is required so that a jury can determine whether PHA was harmed/prejudiced by Zachry's failure to give §5.42 notice. Z.S.Br.54. *Coastal Ref. & Mktg. v. U.S. Fid. & Guar.*, 218 S.W.3d 279, 284-86 (Tex.App.-Hous.[14th Dist.] 2007, pet. denied) (harm/prejudice requirement is an insurance rule). But even if insurance law applied to construction contracts (and it does not), as a matter of law PHA *was* prejudiced by Zachry's failure to give §5.42 notice because PHA's Chief Engineer was deprived of the opportunity to resolve the dispute before any damages accrued—*i.e.*, the very opportunity that §5.42 is designed to provide.

## V. PHA is Entitled to Segregated <u>Attorneys' Fees</u> the Jury Found for Zachry's R&R Claim.

Contract §3.10 states: "[i]f [Zachry] brings <u>any claim</u> against [PHA] and [Zachry] <u>does not prevail [on] such claim</u>, [Zachry] shall be liable for all attorneys' fees incurred by [PHA] as a result of <u>such claim</u>." A15:§3.10. Zachry will not prevail on its R&R claim if this Court renders judgment against Zachry on that claim.

Zachry says that its LD claim, its claim for amounts withheld for dredging (*infra*, note 1), and its R&R claim are all one "claim." Z.S.Br.65. But Zachry separately pleaded, and the court separately submitted, these three different claims

23

for three different amounts of compensation. Zachry says the judgment "awarded Zachry one lump sum." *Id*. But a judgment could state plaintiff's recovery as a single amount that comprises multiple claims.

Zachry says the "cases defining 'claim' as a 'demand for compensation' do not address whether a claim can encompass multiple theories." Z.S.Br.66. PHA does not deny that each "demand for compensation" (*i.e.*, each "claim") may be supported by multiple theories. Zachry's R&R claim is one "demand for compensation" (*i.e.*, one "claim") based on two different theories (breach of §5.10 and breach of CO4).

Even if Zachry were correct (and it is not) in arguing that its three claims constitute one claim, PHA would still be entitled to attorneys' fees found by the jury because, if this Court renders against Zachry's R&R claim, PHA will prevail on the main issue in the case. *4901 Main v. TAS Auto.*, 187 S.W.3d 627, 634 (Tex.App.-Hous.[14th Dist.] 2006, no pet.); P.S.Br.62-63. Zachry says the "main issue" analysis applies only if "neither party obtains relief." Z.S.Br.67. Zachry is wrong. *Chevron Phillips Chem. v. Kingwood Crossroads*, 346 S.W.3d 37, 72 (Tex.App.-Hous.[14th Dist.] 2011, pet. denied) (alternative holding).

**VI. Invalid "Pass-Through" Claim: Zachry Recovered $8.578 Million in Costs Incurred Not by Zachry, but by Another Entity (Question 5).**

The jury found that, out of Zachry's R&R damages, $8.578 million represented costs incurred not by Zachry, but rather by a new Zachry subsidiary

24

that did not exist until years after PHA's alleged breach. A2:17395. Zachry claims it can recover this $8.578 million on a "pass-through" claim under *Interstate Contracting v. City of Dallas*, 135 S.W.3d 605, 619 (Tex.2004), but Zachry is misreading *Interstate*. Z.S.Br.67-70; P.S.Br.64-68.

### A. A pass-through claim requires that the owner's breach caused the general contractor to breach.

Zachry says *Interstate* does not require, for a pass-through claim, that the owner's breach caused the general contractor (Zachry) to breach its contract with the subcontractor (Zachry's new subsidiary). But that is exactly what *Interstate* does require when *Interstate* says: to prove a pass-through claim, the general must prove that it was "liable to the subcontractor for damages sustained by the subcontractor." *Id.* The only way that the general is "liable to the subcontractor for damages sustained by the subcontractor" is because the general breached its contract with the subcontractor.

Because Zachry's Sub did not exist until *after* PHA's alleged breach, any breach by PHA could not have caused Zachry to breach its contract with the Sub. Rather, any losses the Sub incurred resulted from a bad bargain the Sub struck with Zachry when, long after PHA's alleged breach, the Sub volunteered to work "in the wet" for compensation Zachry agreed to pay the Sub.

25

Zachry erroneously contends that *Interstate* recognizes a valid pass-through claim where the general hires the sub *after the owner's breach*. For that proposition Zachry quotes *Interstate*:

> "Otherwise, the owner could receive a windfall because the subcontractor lacked privity with the owner and the contractor lacked standing to sue the owner for damages suffered by the subcontractor."

*Id.* at 615-16. But this language provides the rationale for a *proper* pass-through claim—*i.e.*, that, because the owner has no contractual privity with the sub, the sub would have no breach-of-contract claim against the owner, and thus, absent a pass-through claim, the owner would get a windfall. Nothing in *Interstate*'s language allows a pass-through claim where (1) the sub did not exist when the owner breached, and therefore (2) the owner's breach did not cause the general to breach its contract with the sub.

Zachry says that, if this Court does not recognize a pass-through claim here, a general contractor will never be able to hire a sub after the owner's breach. But that is a false argument. The general can hire a sub after the owner's breach, but to preserve a damages claim against the owner, (1) the general must pay the sub fair compensation, and then (2) the general recoups, from the owner, as the general's damages, whatever damages the general sustains, including payments the general makes to the sub.

**B.** **Zachry misreads *Interstate* concerning when the burden of proof shifts.**

To prove a pass-through claim, Zachry must prove that, due to PHA's breach, Zachry incurred breach-of-contract damages to its sub. Zachry, misreading *Interstate*, argues that Zachry's burden of proof somehow shifted to PHA. Zachry quotes *Interstate*:

> "If the owner disputes that this requirement [of continuing liability] has been met, it [the owner] bears the burden of proving, as an affirmative defense, that <u>the pass-through arrangement negates</u> the contractor's responsibility for the costs incurred by the subcontractor."

135 S.W.3d at 619. This *Interstate* language applies where (unlike here) the owner claims that the pass-through *agreement*—entered into by general and sub to allow the general to bring the sub's damages claim—"negate[d]" the general's breach-of-contract liability to the sub. The quoted language does not abrogate the general's initial burden to prove a pass-through claim by proving: (1) owner's breach caused general to breach its contract with sub, and (2) the amount of general's breach-of-contract liability to sub.

**C.** **Zachry misreads the Master Services Agreement ("MSA").**

Zachry argues that MSA, Zachry's contract with the Sub (A23), requires Zachry to compensate the Sub for all the Sub's costs. Z.S.Br.68. But Zachry ignores: (1) MSA *collectively* covers <u>six</u> construction contracts, including PHA's Contract, and (2) MSA's §3.2 "Payment Limitation" caps Zachry's liability to its

27

Sub, for all <u>six</u> contracts *collectively*, at the total amount of payments that Zachry receives *collectively* from all <u>six</u> owners on all <u>six</u> contracts. Because there is no evidence concerning reimbursable costs or payments received *on the other five contracts*, there is no way to know how much, if any, the Sub failed to recoup (under MSA) for PHA's contract. Zachry failed to prove how much, under MSA, Zachry owed the Sub for the PHA contract.

## VII. Erroneous Exclusion of PHA's $8+ Million in Harms/Losses.

Zachry prevailed on the court to exclude evidence that Zachry caused PHA $8+ million in harms/losses—harms/losses PHA disclosed on July 24, 2009, <u>three months before trial</u>, in response to Zachry's June 11, 2009 fourth set of interrogatories. A12:1-6.

### A. PHA's interrogatory response <u>was timely.</u>

The initial docket control order, in a provision never modified, states: "[t]he parties may conduct discovery beyond [the discovery] deadline by agreement." SCR1:11-12. That is what happened: (1) Zachry propounded Zachry's June 11, 2009 interrogatory asking PHA to quantify all PHA's harms/losses; and (2) PHA responded on July 24, 2009, timely complying with Zachry's request by fully quantifying PHA's harms/losses. P.S.Br.52-53.

Zachry says PHA did not timely disclose that PHA intended to use its harms/losses as an offset defense (Z.S.Br.56-57), but PHA's "Theories Disclosure"

timely *disclosed* that "Zachry's claims" for "*any* alleged breach…of the Contract" are "barred by the <u>defense of offset</u>" (P.S.Br.51).

**B.    Zachry's interrogatory and PHA's response were <u>not limited to</u> disclosing PHA's harms/losses for <u>proportionality of LDs</u>.**

The trial court had *no discretion* to misread, as a matter of law, discovery and erred, as a matter of law, in holding that Zachry's interrogatory and PHA's response limited the purpose of quantifying PHA's harms/losses only to showing that PHA's actual damages were proportional to contractual liquidated damages ("LDs").  Z.S.Br.55-56.

Zachry's interrogatory broadly asked PHA (1) to "describe *each and every way* that You contend You have been harmed by Zachry in regards to [Zachry's] performance of the Contract," and (2) to quantify "the amount of damages sustained for *each* of the claimed harms You allege resulted from *Zachry's alleged misconduct*."  A12.  Neither Zachry's interrogatory nor PHA's response was limited to harms/losses for delay—the only type of harm/losses that could relate to proportionality of LDs.  *See* A15:§5.05 (LDs for delay).

**C.    <u>Excluding PHA's $8+ million in harms/losses</u> was harmful.**

PHA prevailed with the jury on the two PHA harms/losses that were tried: (1) Zachry's claim for $600,000 that PHA withheld for Zachry's defective dredging, and (2) PHA's defense seeking to offset, against Zachry's claim for $2.36 million that PHA withheld as LDs, $970,000 for Zachry's defective work on

29

the Wharf's fenders. A2:17402, 17405. A new trial on Zachry's LD claim is required because the excluded PHA $8+ million in harms/losses could have provided an additional offset.[9]

## VIII. Zachry <u>Opened the Door</u> to PHA's Harms/Losses.

Zachry says it "never opened the door" (Z.S.Br.58-59), but the trial court could not have abused its discretion in holding (as it did) that Zachry *did* <u>open the door</u> to previously-excluded evidence of PHA's harms/losses because

(1) Zachry adduced evidence that PHA's Vincent promised that PHA would not charge LDs *unless PHA was harmed*; and

(2) Zachry argued to the jury, and Anderson testified, that PHA's later decision to charge LDs, given Vincent's promise, constituted bad faith and arbitrary/capricious conduct for NDFD exceptions.

A10; P.S. Br.54-56.

Zachry says "[a]t most Zachry opened the door to evidence the ship was not able to dock on arrival." Z.S.Br.59. But the court's open-the-door order rejected that view and held that Zachry opened the door to "evidence of reasonably anticipated actual harms." A10. Zachry cites the Supreme Court's recitation of facts (Z.S.Br.10-11), but the Supreme Court was not addressing the open-the-door issue/order.

---

[9] If this Court orders a new trial on Zachry's R&R claim, PHA will seek to try its $8+ million offset against Zachry's R&R damages.

30

The trial court held that Zachry opened the door and left a misimpression with the jury as to whether PHA had sustained harms/losses. But then, citing Rule 403, the court *excluded the very evidence that the court's open-the-door order held was necessary to correct the misimpression Zachry had created*. A10. Even if admitting the previously-excluded harms/losses evidence would prejudice Zachry, such prejudice would not be "unfair" under Rule 403; any prejudice was of Zachry's own making given that Zachry opened the door.

**A.** **Zachry misunderstands *Horizon/CMS Healthcare v. Auld*, 34 S.W.3d 887, 905-07 (Tex.2000) and misrelies on *Hayden v. State*, 296 S.W.3d 549, 554 (Tex.Crim.App. 2009).**

*Auld* requires admission of the evidence necessary to correct the misimpression created by the party opening the door. Zachry says that *Auld* does not address Rule 403. Z.S.Br.59. But where, as here, the party opening the door creates a misimpression on a central issue, the Rule 403 inquiry could only have one result—*i.e.*, admit evidence necessary to correct the misimpression and prevent a skewed trial. Zachry cites *Hayden*, but in *Hayden*, the misimpression was created on a "collateral issue" and, by opening the door, the party did not "create[] a false impression" on any issue that is "directly relevant to the offense charged" or "the appropriate sentence to impose." 296 S.W.3d at 554-55.

**B.    The court's erroneous exclusion of the open-the-door evidence was harmful.**

The open-the-door evidence went to two of four NDFD exceptions—bad faith and arbitrary/capricious conduct.  As explained below, charge error tainted the third NDFD exception, fraud.  Under *Crown Life Ins. v. Casteel*, 22 S.W.3d 378, 381 (Tex.2000), harm is presumed if error tainted any <u>one</u> of the NDFD exceptions.  P.S.Br.57-58.

**IX.    Charge Error Skewed the Trial on the NDFD Exception for Fraud.**

Three Supreme Court cases hold that "[a] promise to do an act in the future is actionable fraud when made with the <u>intention, design and purpose</u> of deceiving."  P.S.Br.56-58.  Zachry argues the Supreme Court, in its opinion remanding to this Court, "approved" the reckless fraud instruction.  Z.S.Br.60.  But while the Supreme Court said the charge correctly described the owner's misconduct giving rise to NDFD exceptions, the Court did not address PHA's challenge to the "reckless" fraud charge instruction.  Surely, if the Supreme Court were going to overturn its prior jurisprudence on this recklessness question, that Court would have addressed the issue.

Zachry misunderstands *Casteel* when Zachry argues for harmless error.  Z.S.Br.61.  Under *Casteel*, given a charge objection, the error is presumed harmful because there is no way to know whether the jury based a fraud determination on

recklessness. *Casteel*, 22 S.W.3d at 381. And, the difference in culpability, between <u>recklessness</u> and <u>intentional misconduct</u>, is significant. Z.S.Br.61.

## X. The Erroneous Apparent Authority Instruction Skewed the Trial.

### A. The Contract Negated Apparent Authority.

As a matter of law, "apparent authority <u>is not available</u> where the other contracting party has notice of the limitations of the agent's power." *Douglass v. Panama*, 504 S.W.2d 776, 779 (Tex.1974); *Humble Nat. Bank v. DCV*, 933 S.W.2d 224, 237-38 (Tex.App.-Hous. [14th Dist.] 1996, writ denied); P.S.Br.58-60.

Zachry was aware of limitations on Thiess's authority because Contract Special Condition 12(d) said Thiess's company CH2M "does *not* have the authority of [PHA's] Chief Engineer" and "has no authority to…change any of the terms and conditions of the Contract." A16. The erroneous apparent-authority instruction misled the jury into believing that Thiess had apparent authority to do what Special Condition 12(d) expressly denies him authority to do—*i.e.*, stand in place of PHA's Chief Engineer to receive §5.42 notice or direct additional work. P.S.Br.58-59.

Zachry cites *Equitable Life v. Ellis*, 147 S.W. 1152, 1158 (Tex.1912) (Z.S.Br.62), but *Equitable* dealt with whether the employee, Brophy, had <u>actual</u> authority whereas *Douglas*s dealt with <u>apparent</u> authority. Zachry cites *Paramount*

*National Life v. Williams*, 772 S.W.2d 255, 261-62 (Tex. App.—Hous.[14th Dist.] 1989, writ denied), where it was "unreasonable to expect Mrs. Williams [the unsophisticated, not-well-educated insured] to comprehend the limit of the authority of the agent." *Id.* at 262. But sophisticated Zachry could have no problem comprehending Special Condition 12(d) limiting Thiess' authority.

Zachry says the Construction Management Plan (CMP) abrogated Special Condition 12(d)'s limits on Thiess authority. Z.S.Br.62. But CMP says that CH2M has the authority "normally attributed" to a construction manager and that "delegated to the Inspector by the contract documents," which include Special Condition 12(d). CMP says CH2M:

- "will not have authority to make changes to any provisions of the [Contract] in regard to costs[]; time of completion[]; or quality of in-place work;" and

- "will provide no direction related to [Zachry's] construction means, methods."

ZA39:§2.2.

## B. Additionally, Zachry did not plead apparent authority.

Zachry pleaded that PHA "charged and designated" CH2M as an agent, but that language pleaded actual authority and was not "sufficient to present the issue of apparent authority as *contradistinguished from actual authority*." *Cont'l Oil v.*

*Baxter*, 59 S.W.2d 463, 467 (Tex.Civ.App.-Eastland 1933, no writ). Even broadly construed, Zachry's pleading did not give fair notice that Zachry was pleading apparent authority, as distinguished from actual authority. The court recognized as much in holding PHA would have been "**surprised and prejudiced**" by a trial amendment pleading apparent authority. The court said it "could easily be wrong" when it held Zachry had pleaded apparent authority. 65:5.

Respectfully submitted,

/s/ Marie R. Yeates

David E. Keltner
State Bar No. 11249500
KELLY HART & HALLMAN LLP
201 Main Street, Suite 2500
Fort Worth, Texas 76102
Phone: 817.878.3560
Fax: 817.878.9760
Email: david.keltner@kellyhart.com

David H. Brown
State Bar No. 03109200
BROWN & KORNEGAY LLP
2777 Allen Parkway, Suite 977
Houston, Texas 77019
Phone: 713.528.3703
Fax: 713.528.3701
Email: dbrown@bkllp.com

Marie R. Yeates
State Bar No. 22150700
Catherine B. Smith
State Bar No. 03319970
Michael A. Heidler
State Bar No. 24059921
VINSON & ELKINS L.L.P.
1001 Fannin, Suite 2500
Houston, Texas 77002
Phone: 713.758.4576
Fax: 713.615.5544
Email: myeates@velaw.com

Karen L.T. White
State Bar No. 20274500
KAREN L.T. WHITE, P.C.
1415 S. Voss, Suite 110-539
Houston, Texas 77057
Phone: 832.646.4667
Email: karen@kltwpc.com

Lawrence J. Fossi
State Bar No. 07280650
FOSSI & JEWELL LLP
4203 Yoakum Blvd., Suite 100
Houston, Texas 77006
Phone:  713.529.4000
Fax:  713.529.4094
Email: lfossi@fossijewell.com

Bill Sims
State Bar No. 18429500
VINSON & ELKINS L.L.P.
2001 Ross Avenue, Suite 3700
Dallas, Texas 75201-2975
Phone:  214.220.7703
Fax:  214.999.7703
Email:  bsims@velaw.com

***Attorneys for Appellant • The Port of Houston Authority of Harris County, Texas***

## CERTIFICATE OF COMPLIANCE

Pursuant to Texas Rule of Appellate Procedure 9.4(i)(3), I hereby certify that this brief contains 7,496 words, excluding the words not included in the word count pursuant to Texas Rule of Appellate Procedure 9.4(i)(1). This is a computer-generated document created in Microsoft Word, using 14-point typeface for all text. In making this certificate of compliance, I am relying on the word count provided by the software used to prepare the document.

<u>/s/ Michael A. Heidler</u>
Michael A. Heidler

# CERTIFICATE OF SERVICE

I certify that, on July 13, 2015, the foregoing document was served on all

counsel listed below via the designated service method(s):

Brandon T. Allen [*e-service*]
State Bar No. 24009353
ballen@reynoldsfrizzell.com
REYNOLDS, FRIZZEL, BLACK, DOYLE,
ALLEN & OLDHAM, LLP
1100 Louisiana, Suite 3500
Houston, Texas  77002
***Attorney for Appellee, Zachry***
***Construction Corporation***

Robin C. Gibbs [*certified mail, return*
*receipt requested, and e-service*]
State Bar No. 0785300
rgibbs@gibbsbruns.com
Jennifer Horan Greer [*e-service*]
State Bar No. 00785611
jgreer@gibbsbruns.com
Sydney G. Ballesteros [*e-service*]
State Bar No. 24036180
sballesteros@gibbsbruns.com
Michael R. Absmeier [*e-service*]
State Bar No. 24050195
mabsmeier@gibbsbruns.com
Amanda B. Nathan [*certified mail, return*
*receipt requested, and e-mail*]
State Bar No. 00784662
anathan@gibbsbruns.com
GIBBS & BRUNS, LLP
1100 Louisiana, Suite 5300
Houston, Texas  77002
***Attorneys for Appellee, Zachry***
***Construction Corporation***


/s/ Michael A. Heidler
Michael A. Heidler

38